**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| **ERICA BELL**<br>16521 Anegada Dr.<br>Accokeek, MD 20607 | |
| | **CASE NO.**＿＿＿＿＿＿＿ |
| and | |
| **XANA COLVIN**<br>16723 Caribbean Way<br>Accokeek, MD 20607 | **Jury Trial Demanded** |
| and | |
| **CARLOS COLVIN**<br>16723 Caribbean Way<br>Accokeek, MD 20607 | |
| and | |
| **KYMM WATSON**<br>16600 Tortola Drive<br>Accokeek, MD 20607, | |
| Plaintiffs, | |
| v. | |
| **CARUSO HOMES, INC.**<br>2120 Baldwin Ave.<br>Suite 200<br>Crofton, MD 21114 | |
| Serve:<br>Darin S. Levine<br>839 Quince Orchard Blvd., Suite M<br>Gaithersburg, MD 20878 | |
| and | |
| **CARUSO SIGNATURE CLUB**<br>**MGT, LLC**<br>2120 Baldwin Ave.<br>Suite 200 | |

Crofton, MD 21114

<u>Serve</u>:
Darin S. Levine
839 Quince Orchard Blvd., Suite M
Gaithersburg, MD 20878

and

**NVR, INC. d/b/a RYAN HOMES**
11700 Plaza America Dr.
Suite 500
Reston, VA 20190

<u>Serve</u>:
CSC
7 St. Paul Street
Suite 820
Baltimore, MD 21202

and

**SIGNATURE 2016 RESIDENTIAL, LLC**
2120 Baldwin Ave.
Suite 200
Crofton, MD 21114

<u>Serve</u>:
Darin S. Levine
839 Quince Orchard Blvd.
Suite M
Gaithersburg, MD 20878

and

**SIGNATURE CLUB HOMEOWNERS ASSOCIATION, INC.**
2120 Baldwin Ave.
Suite 200
Crofton, MD 21114

<u>Serve</u>:
Darin S. Levine
839 Quince Orchard Blvd.

2

Suite M
Gaithersburg, MD 20878

and

**VIKA MARYLAND, LLC**
20251 Century Blvd.
Suite 400
Germantown, MD 20874

<u>Serve</u>:
Charles A. Irish, Jr.
10832 Stanmore Dr.
Potomac, MD 20854

and

**DELMARVA SITE
DEVELOPMENT, INC.**
110 Back Starr Road
Centreville, MD 21617

<u>Serve</u>:
Anthony F. Feurer
7550 Teague Road
Suite 400
Hanover, MD 21076

and

**AIRVAC, INC.**
4217 N. Old Highway 31
Rochester, IN 46975

<u>Serve</u>:
CSC
7 St. Paul Street
Suite 820
Baltimore, MD 21202

Defendants.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Erica Bell, Xana Colvin, Carlos Colvin, and Kymm Watson, on behalf of themselves and the entire class of persons similarly situated, by and through their attorneys Brian J. Markovitz, Drew LaFramboise, and Joseph, Greenwald & Laake, P.A., file this Class Action Complaint, sue the Defendants for cause, claim damages, and state as follows:

**INTRODUCTION**

1.      Plaintiffs Erica Bell, Xana Colvin, Carlos Colvin, and Kymm Watson, and the alleged Class Members, are current or past residents of a residential neighborhood in Accokeek, Prince George's County, Maryland called "Signature Club."

2.      Plaintiffs and the alleged Class Members have been caused to suffer past and continuing harm in the form of property damage, flooding, sewage backup and intrusion of sewage into dwelling spaces and properties, noxious odors, environmental nuisance, financial damages, and other damages due to the Defendants' acts and omissions as detailed herein.

3.      At all times relevant hereto, the Defendants, and each of them, knew or should have known that the private sewage and wastewater system (hereinafter "sewer system") installed in the Signature Club neighborhood was improperly installed, improperly designed, improperly maintained, and otherwise inadequate for its intended use, and that it would cause damage to the residents of Signature Club, including the Plaintiffs.

4.      At the time the Plaintiffs and alleged Class Members purchased their homes at Signature Club, they were not aware that they would be subjected to the harm that is alleged herein.

5.      The Plaintiffs and alleged Class Members have suffered additional financial harm due to the Defendants' acts and omissions detailed herein, in the form of overbilling for

4

wastewater services, overpayment for their respective properties, increased insurance premiums, and diminution of the value of their homes and properties.

6.      The harm that the Plaintiffs and alleged Class Members have suffered continues through present day.

7.      The acts and omissions causing the harm that the Plaintiffs and alleged Class Members have suffered and continue to suffer have been concealed by Defendants and were concealed from Plaintiffs and alleged Class Members at the time that each Plaintiff and alleged Class Member entered into contracts to purchase their homes.

## PARTIES

8.      Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23, as a class action on their own behalf and on behalf of the entire class of people similarly situated.

9.      Plaintiff ERICA BELL ("Erica Bell" or "Ms. Bell") is a citizen and resident of Prince George's County, Maryland.  Since August 2021, Ms. Bell has resided in the Signature Club neighborhood, at 16521 Anegada Drive, Accokeek, Maryland 20607.

10.      Plaintiff XANA COLVIN ("Xana Colvin" or "Ms. Colvin") is a citizen and resident of Prince George's County, Maryland.  Since March 2021, Ms. Colvin has resided in the Signature Club neighborhood, at 16723 Caribbean Way, Accokeek, Maryland 20607.

11.      Plaintiff CARLOS COLVIN ("Carlos Colvin" or "Mr. Colvin") is a citizen and resident of Prince George's County, Maryland.  Since March 2021, Mr. Colvin has resided in the Signature Club neighborhood, at 16723 Caribbean Way, Accokeek, Maryland 20607.

12.      Plaintiff KYMM WATSON ("Kymm Watson" or "Ms. Watson") is a citizen and resident of Prince George's County, Maryland.  Since March 2022, Ms. Watson has resided in the Signature Club neighborhood, at 16600 Tortola Drive, Accokeek, Maryland 20607.

13.     Defendant CARUSO HOMES, INC. ("Caruso Homes") is a Maryland corporation with its principal place of business in Crofton, Maryland.  Caruso Homes is engaged in the business of building and developing residential homes and neighborhoods, including Signature Club.

14.     Defendant CARUSO SIGNATURE CLUB MGT, LLC ("Caruso Signature Club Mgt") is a Maryland limited liability company with its principal place of business in Crofton, Maryland.  Upon information and belief, Caruso Signature Club Mgt was formed and is managed, owned, controlled, and/or operated by Caruso Homes and/or agents, officers, and employees of Caruso Homes.  Caruso Signature Club Mgt is engaged in the business of acquiring, holding, owning, improving, developing, leasing, managing, subdividing, pledging, and borrowing money against Signature Club and improvements thereon.

15.     Defendant NVR, INC. d/b/a RYAN HOMES ("Ryan Homes") is a Virginia corporation with its principal place of business in Reston, Virginia.  Ryan Homes is and was at all times registered to do business in the State of Maryland.  Ryan Homes is engaged in the business of building and developing residential homes and neighborhoods, including Signature Club.

16.     Defendant SIGNATURE 2016 RESIDENTIAL, LLC ("Signature 2016 Residential") is a Maryland limited liability company with its principal place of business in Crofton, Maryland.  Upon information and belief, Signature 2016 Residential was formed and is managed, owned, controlled, and/or operated by Caruso Homes and Caruso Signature Club Mgt and/or agents, officers, and employees of Caruso Homes and Caruso Signature Club Mgt. Signature 2016 Commercial was at all relevant times engaged in the business of acquiring,

holding, owning, improving, developing, leasing, managing, subdividing, pledging, and borrowing money against Signature Club and improvements thereon.

17.     Defendant SIGNATURE CLUB HOMEOWNERS ASSOCIATION, INC. ("Signature Club HOA") is a Maryland corporation with its principal place of business in Crofton, Maryland.  Upon information and belief, Signature Club HOA was formed and is managed, owned, controlled, and/or operated by Caruso Homes and/or agents, officers, and employees of Caruso Homes.  Signature Club HOA is engaged in the business of managing and maintaining Signature Club.

18.     Defendant VIKA MARYLAND, LLC ("VIKA Maryland") is a Maryland limited liability company with its principal place of business in Germantown, Maryland.  VIKA Maryland is engaged of the business of rendering engineering, planning, and design services to the construction industry, and was involved in and/or responsible for engineering, planning, and design of Signature Club and the Signature Club sewage and wastewater system.

19.     Defendant DELMARVA SITE DEVELOPMENT, INC. ("Delmarva Site Development") is a Maryland corporation with its principal place of business in Centreville, Maryland.  Delmarva Site Development is engaged in the business of preconstruction and site development, including the site development of the Signature Club development.

20.     Defendant AIRVAC, INC. ("Airvac") is a corporation formed in Delaware with its principal place of business in Rochester, Indiana.  At all times relevant hereto, Airvac was registered to do business in, or otherwise did business in, the State of Maryland.  Airvac is engaged in the business of designing, manufacturing, installing, and maintaining vacuum sewage and wastewater systems, including the sewer system installed at Signature Club.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), in that there is minimal diversity of citizenship, over 100 putative class members, and more than $5 million in controversy.

22.     Venue is proper in this Court as the events, acts, and omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

### A.  The Development of Signature Club

23.     In or around 2005, a Maryland company called TSC/Muma Mattawoman Associates Limited Partnership ("TSC/Muma") purchased a 70-acre tract of land in Accokeek, Prince George's County, Maryland.

24.     TSC/Muma purchased this tract of land with the intention of building 315 assisted living units, including a large multi-unit building for residents 55 and older.  The residential units were to be developed in a condominium regime on a single lot.

25.     TSC/Muma named the proposed development "Signature Club at Manning Village."

26.     TSC/Muma hired a company called Mitchell Engineering LLC[1] to provide project engineering and design for the development, including creating the concept plan, preliminary plan, and original site development plan.

---

[1] Mitchell Engineering's owner was Donald Mitchell, who subsequently joined VIKA Maryland as a senior associate engineer in or around 2013.

27.     Pre-construction and conceptual development of the Signature Club at Manning Village project commenced in approximately August 2007.

28.     TSC/Muma formed and incorporated the Manning Master Village Association in April 2008 to serve as the condo association for the proposed development.

29.     In 2011, TSC Muma recorded a Declaration of Covenants, Conditions and Restrictions for the Manning Master Village Association.

30.     Upon information and belief, TSC/Muma subsequently hired VIKA Maryland to take over the work of Mitchell Engineering LLC.

31.     In 2014, as part of the initial development of this land, TSC/Muma and VIKA Maryland designed and built a sewage and wastewater pumping station in order to manage wastewater in the proposed community.

32.     In the pumping station, TSC/Muma—by and through hired contractors—installed a vacuum sewer pump that was designed and manufactured by Airvac.

33.     Pursuant to plans created by VIKA Maryland, the vacuum sewer pump was designed to be connected to wastewater lines that would extend to the proposed residential living facilities in the development.

34.     The Airvac vacuum sewer system was designed such that the pump maintains continuous vacuum pressure on the entire system.

35.     Valve pits (also known as "crocks") hold wastewater at our near the homes and living facilities.  The crocks connect to the homes and living facilities by gravity sewage lines.

36.     In each valve pit, vacuum valves are intended to seal the system and keep the wastewater from moving through the pipes.

37.     After 10 gallons of wastewater collect in the valve pit, the vacuum valves are activated and the system is quickly unsealed.

38.     The differential pressure sends the wastewater and sewage through the piping and into the vacuum station.



*Diagram of Airvac vacuum sewer system, https://www.airvac.com/en/vacuum-sewer-system.*

39.     After being sent to a collection tank in the vacuum pumping station, the sewage and wastewater is then forced through a main pipe to the nearby wastewater treatment plant.

40.     After the pumping station was built in 2014, TSC/Muma abandoned the project without building the residential living facilities and without installing the vast majority of the sewer system.

41.     The project went into foreclosure, and the unimproved land was purchased in May 2016 by Premier Bank, Inc., which took over title.

42.     At some point thereafter, Caruso Homes became interested in redeveloping the land and building a community of residential homes.

43.     On November 14, 2016, Caruso Homes and/or its officers and employees formed Signature 2016 Residential for the purpose of purchasing and redeveloping the tract of land.

44.     Caruso Homes hired VIKA Maryland to amend the detailed site plan, which had previously been approved by Prince George's County, Maryland.

45.     VIKA Maryland created a detailed site plan amendment for Caruso Homes in 2017.  The plan included 312 fee-simple lots with a mix of 217 single family homes and 95 townhome units.

46.     The detailed site plan amendment also included common elements, including four playgrounds and a meeting hall/clubhouse.

47.     These substantial changes in the site plan greatly increased the demand that would be placed on the sewer system.

48.     Despite the substantial changes to the scale, purpose, and design of the development, Caruso Homes, Signature 2016 Residential, and VIKA Maryland did not modify or expand the design of the existing pump house and pumping station.

49.     Upon information and belief, despite substantial changes to the scale, purpose, and design of the development, Caruso Homes, Signature 2016 Residential, and VIKA Maryland did not take adequate measures to ensure that the existing pumping station and vacuum sewer technology—as originally designed—would have sufficient pumping capacity for the demand of 312 single family and townhomes and a common meeting hall, nor did they modify or redesign the sewer system to account for this substantial change in demand.

50.     VIKA Maryland prepared the final engineering and construction plans for the development project, including the plans for the installation of the wastewater and sewage lines and valve pits.

51.     According to the plans, between two and four homes would be connected to each valve pit.

52.     VIKA Maryland was responsible for the design and layout of the vacuum main, the valve pits, and the lateral pipes in the sewer system.  Airvac was responsible for ensuring that the design would work with the existing vacuum sewer system and pump station.

53.     The detailed site plan amendment application was submitted to the Prince George's County, Maryland Planning Board in 2017.  The applicant was listed as "Macarthur Development LLC" which used the mailing address of Caruso Homes.

54.     It was represented to the Planning Board that the project would also include a "Phase 2" through which commercial and mixed-use buildings would be constructed.

55.     During the course of planning and development of Signature Club, the Washington Suburban Sanitary Commission (WSSC) reviewed and provided feedback on the proposed private sewer system.  Of note, in reviewing Caruso and VIKA's plans in September 2017, WSSC directed Caruso Homes and VIKA to ensure that "[a]ll Airvac sewer valves serving homes must be armed with an alarm."

56.     Upon information and belief, the Defendants did not arm all sewer valves with an alarm.

57.     WSSC also formally requested that Caruso Homes and VIKA provide "information on existing vacuum pump and tank system [to] show they are adequate for the new development."

58.     The existing vacuum pump and tank system were not adequate for the new development, and in fact, the system lacked adequate pumping capacity to serve the number of dwellings ultimately built.

59.     WSSC formally requested that Caruso Homes and VIKA design and install a 16" water main along Indian Head Highway, which would be "essential to provide service to this project" and would "enhance[] the system connectivity and grades."  It is currently unknown whether the Defendants complied with this request and/or designed and installed this water main properly.

60.     In a September 13, 2017 Letter of Findings to Signature 2016 Residential, WSSC approved a change in ownership in the land from Premier Bank to Signature 2016 Residential, a change in the number of units or type of development, a change in the construction sequence, and a change in the number or configuration of parts of the development project.  This approval was subject to a number of conditions.

61.     As a condition of approval, WSSC required that "each vacuum valve that serve the development be armed with alarms; and alarms be monitored and maintained privately and on a regular basis."  Upon information and belief, the Defendants failed to comply with this condition.

62.     As a condition of approval, WSSC required the following:

*As a condition for service connection, the Home Owners' Association document (HOA) and Site Utility Design plans must declare that properties within the site utility are served by privately owned and maintained vacuum sewers, valves and vacuum station.  The HOA document should also clearly outline maintenance plans for the sewer system.  In addition, Builder/developers/owners must <u>disclose</u> the private nature and the type of sewer system serving the property to purchasers <u>at property settlement</u>.*

(Emphasis in original).

13

63.     The Defendants did not clearly outline maintenance plans for the sewer system in any HOA documents.

64.     The Defendants did not disclose in any reasonable detail the nature and type of sewer system serving the property to purchasers at property settlements/closings.

65.     As a condition of approval, WSSC required that "the Builder/developers/Home Owner's Association will be responsible for all on-site maintenance of vacuum sewers, valves and all components in the vacuum station."

66.     As a condition of approval, WSSC requested that written instructions for use of the sewer system be made available to homeowners.  This did not occur.

67.     The detailed site plan amendment was approved by the Prince George's County Planning Department in December 2017.

68.     In or about March 2018, Defendant Signature 2016 Residential purchased the land from Premier Bank.

69.     On June 4, 2018, TSC/Muma recorded an Assignment of Rights through which it assigned its rights and obligations (set forth under a previously-recorded Declaration of Covenants, Conditions, and Restrictions of Manning Village Master Association) to Signature 2016 Residential.

70.     On June 12, 2018, Manning Village Master Association filed Articles of Revival, through which it stated that it would thereafter use the name Signature Club Homeowners Association, Inc.  The principal office of Signature Club HOA listed in the Articles of Revival is the headquarters of Caruso Homes and Signature 2016 Residential.

71.     Upon information and belief, Signature Club HOA is and has always been managed, controlled, and operated by executives, officers, employees, members, and/or agents of Caruso Homes and Signature 2016 Residential.

72.     On June 29, 2018, Signature 2016 Residential recorded an Amended and Restated Declaration of Covenants, Conditions and Restrictions of Signature Club Homeowners Association, in which it stated, in relevant part: "Declarant intends to develop Declarant's Acquired Property for the construction of market-rate single family and townhomes."

73.     Through the Declaration, Signature 2016 Residential conveyed the common areas of the development to Signature Club HOA.

74.     Through the Declaration, Signature 2016 Residential granted to Signature Club HOA a blanket easement for "ingress, egress, installation, operation, and upkeep of the equipment for providing to any portion of the Property or the adjacent real estate, any utilities, including without limitation . . . sewer . . . whether public or private."

75.     The Signature Club HOA was also granted an easement to perform installations and upkeep of utilities.

76.     Through the Declaration, the Signature Club HOA assumed and undertook a duty to maintain the private sewer system at Signature Club.

77.     In 2019, Signature 2016 Residential began developing the Signature Club site for the construction of hundreds of townhomes and single family homes.

78.     Caruso Homes and Signature 2016 Residential hired Delmarva Site Development to excavate and develop the land.

79.     In or around 2019, Defendants Caruso Homes and Ryan Homes began constructing townhomes and single-family homes at the Signature Club site.

15

80.     Caruso Homes applied for a site utility permit from WSSC to install the private sewer system on the Signature Club property.

81.     Caruso Homes, VIKA Maryland, and Airvac proceeded to engage in communications with WSSC concerning the issuance of the site utility permit.

82.     During this process, WSSC indicated concern that different dwellings with different lower floor levels would be connected to common vacuum sewer pits.  Airvac and VIKA Maryland assured WSSC that the gravity lines were fitted with a backflow prevention device "to protect the connected home(s) against backup of sewage" which made "this connection situation acceptable."

83.     In reality, backup prevention devices were not installed or were improperly installed or otherwise not functional.

84.     VIKA Maryland also assured WSSC that the existing pump station was adequate in design to handle the amount of wastewater flow from the dwellings.  This was incorrect.

85.     On May 6, 2019, Airvac reviewed VIKA Maryland's plans for the three phases of the Signature Club sewer system development and determined that they met Airvac's 2018 design standards.

86.     On May 13, 2019 Caruso Homes received the permit from WSSC.  The permit required that the "Site Utility As-Built [drawings] will be provided by" VIKA Maryland.

87.     Delmarva Site Development and VIKA Maryland corresponded regularly during this time about concerns in modifying the previously-designed sewer system.

88.     On July 22, 2019, Delmarva Vice President Matthew Nelson informed VIKA principal engineer Donald Mitchell that "this system is highly susceptible to failure if there are any bellies [sags or low areas] in the line" and stated that cutting in new sewer-house

connections "every 20-40' sets this system up for leaks/failures."  This same concern was voiced in a pre-construction meeting with Delmarva, VIKA, and WSSC.

89.    Upon information and belief, this concern was not sufficiently addressed, and wastewater lines were installed with deformations and other structural inadequacies.

90.    In or around July 2019, after construction of the homes had begun, Caruso Homes submitted as-built engineering plans created by VIKA Maryland to WSSC for approval.  These plans detailed the sewer system installed at Signature Club.

91.    Of note, the plans stated that each home would have a "sewage backflow preventer" which was noted to be "Residential Plastics PLUMBEST or approved equivalent."

92.    The plans further stipulated: "*All buildings shall have a backflow containment device installed on the outlet side of the water meter, prior to any water uses within the premise, as cited in Section 502.3 of the WSSC Plumbing & Fuel Gas Code.  Backflow preventers shall be maintained by the owner as cited in Section 102.3.9.*"

93.    Upon information and belief, backflow preventers and/or backflow containment devices were not installed or were otherwise inadequately installed by the Defendants or were otherwise not functional.

94.    Under the supervision of Caruso Homes and Signature 2016 Residential, Delmarva Site Development built, installed, and completed the remainder of the private sewer system, in accordance with the amended detailed site plan created by VIKA Maryland.

95.    Signature Club HOA hired a company called Inframark to inspect and maintain the sewage and wastewater system.

96.    As part of the construction of homes at the Signature Club site, Caruso Homes and Ryan Homes connected the homes to the sewage lines installed by Delmarva Site

Development.  These sewage lines connected the homes to the Airvac valve pits, which then connected to the pumping station.

97.    On February 11, 2020, WSSC determined that the sewer system was substantially complete.

98.    On April 23, 2020, WSSC released for service the site utility permit for the sewer system.

99.    On June 26, 2020, Signature 2016 Residential, for the benefit of CHS Utilities—a private utilities company formed and operated by owners, employees, and officers of Caruso Homes—recorded a Declaration for Deferred Water and Sewer Facilities Charges.

100.    In that Declaration, Signature 2016 Residential stated that it "intends to establish charges upon the Lots, payable to [CHS Utilities] . . . whereby [CHS Utilities] will recover the costs of providing or causing to be provided the Water and Sewer Facilities to the Lots, by establishing charges against the Lots to be repaid by each Lot Owner . . . together with a reasonable rate of interest, over a period of twenty (20) years."

101.    The Declaration established that the annual water and sewer facilities charges shall be set at $773.01 per single family home per year and $469.43 per townhouse lot per year.

102.    In early 2021, residents began purchasing and moving into homes in the Signature Club development.

103.    Residents, including the Plaintiffs and alleged Class Members, entered into sales contracts with either Caruso Homes, Signature 2016 Residential, or Ryan Homes, depending on the type and specific location of their respective homes.



*Overhead diagram of the Signature Club development created by Caruso Homes. "Other Builder" denotes Ryan Homes.*

**B. Residents experience widespread and ongoing sewage backups, flooding, and environmental nuisance.**

104.    Beginning in the summer of 2021, Signature Club residents began experiencing flooding and sewage backups in their homes, driveways, and properties.

105.    These flooding and sewage backup events continue through present day.

106.    Over the course of more than two years, dozens of Signature Club homes and properties have experienced and been affected by sewage backup and wastewater flooding events.

107.    These sewage backup and flooding events have caused damage to numerous homes and properties in the Signature Club development.

19

108.    These sewage backup and flooding events have caused financial damage and other harm to the Signature Club residents.

109.    At the outset, Signature 2016 Residential, Signature Club HOA, Caruso Homes, and Ryan Homes were made aware of the events by residents, who were justifiably angry and disturbed.

110.    In September 2021, Inframark was deployed to the community and performed an inspection.  Their inspection unveiled construction debris in the wastewater lines and numerous dysfunctional vacuum sewer pits.

111.    Inframark also found that couplings in the system were loose and that there was at least one deformation in the wastewater lines.

112.    During this inspection, Inframark noted that the vacuum pump station was dysfunctional and not performing as designed.

113.    At or around this time, Caruso Homes, Signature 2016 Residential, Signature Club HOA, and the HOA's hired property management company—Tidewater Property Management, Inc. ("Tidewater")—began blaming residents for flushing improper materials down the toilet, which these Defendants contended was causing backups.

114.    In fact, there is no evidence that any materials flushed by residents, if such materials were even flushed, were causative of sewage backups, overflows, or flooding events.

115.    On September 4, 2021, at least three homes at Signature Club experienced sewage backups.

116.    On September 14, 2021, at least one home at Signature Club experienced a sewage backup.

117.    On October 28, 2021, at least one home at Signature Club experienced a sewage backup, and it was observed at this time that multiple valve pits were dysfunctional.

118.    On December 27, 2021, at least one home at Signature Club experienced a sewage backup.

119.    On February 19, 2022, at least two homes at Signature Club experienced sewage backups.

120.    On February 28, 2022, at least two homes at Signature Club experienced sewage backups.

121.    On March 7, 2022, Tidewater sent an email to Signature Club residents about "an issue with low pressure in [the] sewer system."  The email stated: "*The crocks only hold approximately 40 gallons of water.  Over usage of water can cause a sewer back up into your home*."  This was an incorrect diagnosis and explanation of the reasons for sewage backups in Signature Club homes, and another effort on the part of Tidewater, Caruso Homes, and Signature Club HOA to blame the homeowners for the sewage backups.

122.    On this same day, March 7, 2022, at least three homes at Signature Club experienced sewage backups.

123.    On March 12, 2022, at least four homes at Signature Club experienced sewage backups.

124.    On March 14 and 15, 2022, at least one home at Signature Club experienced a sewage backup on each day.

125.    Between March 18, 2022 and March 28, 2022, there were multiple emergency issues associated with the sewer system at Signature Club, requiring widespread maintenance.

126.    On March 21, 2022, Tidewater sent an email to residents concerning the "water/sewer disruptions certain homeowners have been experiencing during this week." Tidewater seemed to blame these disruptions on ongoing construction of new homes in the subdivision and "new-home connection[s]."

127.    On May 1, 2022, at least one home at Signature Club experienced a sewage backup.

128.    On May 7, 2022, at least one home at Signature Club experienced a sewage backup.

129.    On May 20, 2022, at least one home at Signature Club experienced a sewage backup.

130.    On May 27, 2022, at least one home at Signature Club experienced a sewage backup.

131.    On May 31, 2022, at least one home at Signature Club experienced a sewage backup.

132.    On June 2, 2022, at least four homes at Signature Club experienced sewage backups.

133.    On June 6, 2022, at least three homes at Signature Club experienced sewage backups.

134.    On June 20, 2022, at least one home experienced a sewage backup.

135.    In July 2022, Tidewater sent another email to residents recognizing that residents may be experiencing "issues with the sewer system such as backups on your property or within your home."

136.    On July 25, 2022, at least two homes at Signature Club experienced a sewage backup.

137.    On August 12, 2022, at least one home at Signature Club experienced a sewage backup.

138.    On August 16, 2022, a number of Signature Club residents jointly sent a letter to Caruso Homes and Tidewater with numerous concerns about maintenance of the community.  In relevant part, these residents stated the following:

> It is clear there have been increasing sewer issues, as well as plumbing issues in the homes.  There have been reports of continuous soot in toilets, rotten egg smelling water, clogging of plumbing, and overflow of plumbing, among other issues.  We recently received notice of an additional 75 townhomes being built in our community, which will undoubtedly further strain the sewer system.

139.    Residents requested Caruso Homes' "prompt action" regarding the matters set out in the letter, which included overbilling for utilities and the HOA's lack of communication about ongoing issues.

140.    Residents continued to experience sewage backups and flooding events in the fall and winter of 2022 and into 2023.

141.    Upon information and belief, these sewage backup and flooding events continued through late 2023.

142.    To date, Defendants have failed to address the sewage backups and flooding events in a manner that will prevent future such events.

143.    Signature Club residents, including Plaintiffs and the alleged Class Members, have been forced to engage in mitigation efforts on their own and at their own expense to address the dangers and risks posed by the defective sewer system.

144.    To make matters worse, throughout the entirety of this time period, residents suffered and continue to suffer continuous noxious odors in the Signature Club.

145.    These noxious odors are emitted every few minutes from the pump station, which is located on the southern end of the property.  As the vacuum pumping system processes sewage, it sends a large volume of foul-smelling exhaust through two tall air terminals located adjacent to the pump house.

146.    The noxious odors, as they waft through the air and settle in the community, have affected and continue to affect the Signature Club residents on a regular and ongoing basis.

147.    The noxious odors cause the neighborhood to smell like sewage on a regular and ongoing basis.

148.    The noxious odors emitted from the pumping station interfere with residents' ability to enjoy and utilize their properties, recreate and congregate in their community, and use outdoor spaces.

149.    The noxious odors emitted from the pumping station cause a depreciation in the value residents are able to obtain from their properties and community.

150.    In or around 2022, residents also began noticing discoloration in the water in their toilet bowls and toilet tanks.

151.    The water leaves behind black or brown soot-like residue and is otherwise discolored.



*Discoloration and soot-like substance in a toilet tank in Plaintiff Kymm Watson's home*

152.    This discolored water often is and was accompanied by sewage smells emitted from residents' sinks, shower/bath drains, toilet bowls, and toilet tanks.

153.    Signature Club residents have also noticed discolored and foul-smelling tap water.

154.    Signature Club residents have suffered and continue to suffer discolored and foul-smelling water through present day.

155.    Signature Club residents have reported the concerns about water discoloration and odor to the Signature Club HOA and their property management company, Tidewater.  When Tidewater inquired about this issue with WSSC, WSSC responded that because Signature Club was a private community with private utilities, WSSC could not confirm the safety of water in the community.

156.    Through present day, Caruso Homes, Ryan Homes, and Signature Club HOA have failed to adequately address the noxious odors, discolored and foul-smelling water, and other environmental nuisances related to and caused by the sewer system.

157.    The sewage backups and flooding, continuous and ongoing noxious odors, and discolored and foul-smelling water have injured Plaintiffs and the alleged Class Members and were caused by the acts and omissions of the Defendants.

**C.  WSSC commences an investigation into the private sewer system at Signature Club.**

158.    On and around Memorial Day 2023, there were a number of issues with the sewer system at Signature Club.  These issues caused sewage backup and flooding on a number of properties and in residents' homes.

159.    Upon information and belief, each of the sewage backups over Memorial Day weekend 2023 occurred in homes designed and built by Ryan Homes.

160.    Signature Club HOA deployed a sewer maintenance company called JCI to the premises to investigate the cause of the widespread sewage backups.

161.    While they were at Signature Club performing maintenance, JCI crew members disclosed to residents that the sewer system lacked the capacity to handle the volume of wastewater it was experiencing, which was causing and had caused ongoing mechanical failures in the sewer system, resulting in backups.

162.    Residents of Signature Club contacted WSSC and Maryland Department of Permitting, Inspections and Enforcement ("DPIE") to report the Memorial Day weekend flooding events.

163.    On June 13, 2023, in response to residents' concerns, WSSC sent a letter to Jeffrey Caruso, President of Caruso Homes, and the Signature Club HOA.

164.    In the letter, WSSC stated that "it has received email correspondence from several homeowners in the Signature Club residential development in Accokeek, Maryland, complaining of sewer backups in their homes."

165.    WSSC ordered that by June 16, 2023, Caruso Homes and the HOA "shall provide to WSSC Water all operating records for the Caruso-HOA SYSTEM, including maintenance records, from the date it was placed into service to present."

166.    WSSC also ordered Caruso Homes and the Signature Club HOA to take the following actions:

> *"(1) assess the condition of the Caruso-HOA SYSTEM, including the SYSTEM's current functionality;*
>
> *(2) determine the cause or causes of the sewer backups in the resident's [sic] homes; and*
>
> *(3) identify any and all remedial actions that Caruso and the HOA intend to take to prevent continuing sewer backups in the Signature Club residential development, including the dates on which each remedial action will be taken."*

167.    As a result of the report and initiation of its investigation, WSSC and DPIE ceased the inspection and permitting process at Signature Club for more than two months in order to investigate the sewer system and until they determined there was a sufficient resolution of the issues.

168.    On June 20, 2023, WSSC and Prince George's County officials met with representatives from Caruso Homes and Signature Residential 2016.  WSSC requested that these Defendants perform a number of tasks, including:

- Determine whether Airvac can redesign the system to include an additional butterfly valves in the pump station;

- Determine whether a backflow check valve can be installed in each system/air release;

- Determine whether a standard operating procedure can be creating for initiating the backflow alarm;

- Determine whether the standard operating procedure is included in the HOA's covenant;

- Obtain certification of the system from Airvac; and

- Have a Maryland licensed master electrician inspect the electrical system, including the generator, that operates the sewer system.

169.    Prince George's County officials also noted that there was no record of a previous inspection of the pump house/pump station.

170.    The butterfly valve in the pump house station—designed by Airvac and VIKA Maryland—was identified by WSSC as a point of failure in the sewer system.

171.    With respect to the butterfly valve, Caruso Homes, Signature Club HOA, and Airvac determined they could not replace or repair this part without a complete rebuild of the entire system.

172.    Caruso Homes and Signature Club HOA also determined that Ryan Homes-built homes did not have floor drains that were above the height of the air release mechanisms in the front yards of the homes.  They determined that this discrepancy contributed to sewage back-ups into some of the homes.

173.    The HOA stated that it "has undertaken, or planned, a series of corrective action steps to address the cause of the sewer crock malfunction and long-term operation and maintenance of the system."  The HOA set out a number of steps, including:

- Signature 2016 Residential purchasing a new vacuum pump for the system and refurbishing two existing pumps.

- Ordering and installing a new butterfly valve;

- Instituting an incident report process in the event of a system malfunction;

- Regular preventative maintenance;

28

- Engaging Airvac to conduct a system inspection

174.    Caruso Homes made a proposal to WSSC, resulting in increased inspections of the pump house and the submission of additional documentation by Caruso Homes and Airvac to WSSC.

175.    On September 19, 2023, Caruso Homes held a town hall meeting with Signature Club residents, during which they vaguely communicated that based on their inspection of the system, they had identified four causes of incidents: 1. "The Pump House"; 2. "Couplings in the crocks"; 3. "Improper things being flushed"; and 4. "Construction debris."

176.    Caruso Homes also communicated that they purchased a new pump for the pump station and refurbished the two existing pumps and installed a "new butterfly valve."

177.    After these remedial efforts, WSSC concluded its investigation and allowed the Signature Club utility permit to go back into effect.

178.    However, these purported efforts have not remediated the issues.  Signature Club residents have continued experiencing flooding, sewage backups, noxious odors, and problems with water, as detailed above.

**D.  Residents have suffered and will continue to suffer financial damages due to the defective sewer system.**

179.    The deficiencies and defects in the Signature Club sewer system have directly and proximately caused Plaintiffs and the alleged Class Members to suffer financial damages, including:

  a.  Over-billing for water services;

  b.  Financial damages related to the repair and maintenance of the defective sewer system;

  c.  Increased homeowner's insurance premiums;

    d.   Deprivation of the fair and full value of residents' payments for wastewater and sewage utilities;

    e.   Deprivation of the full and fair value of residents' homes and properties; and

    f.   The loss and diminution of value in residents' homes and properties.

180.    Homeowners are assessed two charges arising from the sewer system.  First, all homeowners are charged for annual water and sewer facilities utility assessments.  This charge is imposed by Signature 2016 Residential and Caruso Homes, through the private utility companies they have formed.  This charge is a deferred charge that recompenses Caruso Homes and Signature 2016 Residential for the cost of constructing and installing the private sewer system.

181.    Second, residents are charged monthly fees for wastewater usage and disposal, which is billed by the Signature Club HOA.

182.    Because Signature Club residents have a defective and deficient sewer system, they have not received the benefits of the fees and costs they have been forced to expend.

183.    Throughout 2021, 2022, and 2023, Signature Club residents were overbilled by the Signature Club HOA for water and wastewater usage.

184.    The reasons for this are two-fold.  First, the defective sewer system created vast inefficiencies in water usage, resulting in overcharges.

185.    Second, Signature Club HOA charged residents for a commercial rate of water usage, as opposed to a residential rate.  It was not until May 2023, after residents had made Signature Club HOA aware of this significant discrepancy, that Caruso Homes and Signature Club HOA addressed this matter with WSSC and requested to have the rate revised.

186.    Signature Club HOA's failure to ensure that its residents were billed a proper rate for its water and sewer system was inexcusable and the result of the nonfeasance and lack of

attention and due care by Caruso Homes and Signature Club HOA in managing and monitoring residents' water and wastewater billing.

187.    As of August 2023, these steep rates had resulted in a collective homeowner delinquency of approximately $100,000 in missed or overdue payments.

188.    Caruso Homes and Signature Club HOA were required to enter into a delinquency payment plan with WSSC to ensure that water services were not suspended from the community.

189.    Furthermore, the issues with the wastewater management and the dysfunction and defects in the sewer system have resulted in considerable expenditures that have flowed and will continue to flow to the residents in the form of assessments and homeowner's association fees.

190.    For example, the HOA budget for water and sewer system maintenance increased from $37,200 in 2022 to $150,000 (proposed) in 2023.  The HOA budget for the pumping station increased from $78,701 in 2022 to $235,000 in 2023.

191.    Residents are paying and have paid, through assessments and fees, for regular maintenance and emergency responses by JCI (and before them, Inframark) due to defects in the sewer system.

192.    Residents are paying and have paid, through assessments and fees, for repairs and purchases of parts and equipment to attempt to remediate the defective sewer system.

193.    The substantial increases in expenditures, costs, fees, and assessments will continue to be experienced by Signature Club residents into the future.

194.    Moreover, residents have suffered a diminution in value of their homes and properties as a result of the defective and dysfunctional sewer system at Signature Club, history of flooding on properties and in the community, noxious odors and environmental nuisance, and

a homeowners' association that has improperly managed the utilities, billing, and finances of the community.

## FACTUAL ALLEGATIONS RELATED TO THE INDIVIDUAL CLASS REPRESENTATIVES

### Plaintiff Erica Bell

195.    Plaintiff Erica Bell resides in the Signature Club community at 16521 Anegada Drive, Accokeek, Maryland 20607.

196.    Ryan Homes built Ms. Bell's home.

197.    Ms. Bell purchased her home from Ryan Homes on August 20, 2021.  She paid $397,915 for her home.

198.    When Ms. Bell purchased her home, Ryan Homes did not disclose the fact that Signature Club had a private vacuum sewer system, nor did they describe in any manner the nature and type of the system.

199.    When Ms. Bell purchased her home, Ryan Homes did not disclose the nature or amount of assessments, fees, and costs that would be paid by Ms. Bell arising from the private sewer system at Signature Club.

200.    Ms. Bell has experienced sewage backup and flooding on four (4) separate occasions.  On two occasions—March 15, 2022 and June 11, 2022—Ms. Bell experienced damage to her property, which required repairs and financial expenditures.

201.    The flooding events forced Ms. Bell to significantly increase her homeowner's insurance policy, resulting in increased premium rates.

202.    Ms. Bell has experienced and continues to experience noxious odors from the sewer system in the Signature Club community.

203.    Ms. Bell has experienced and continues to experience noxious odors and discoloration in her tap water, drains, and toilet.

204.    Ms. Bell has suffered financial damages in the form of assessments and fees to repair and maintain the defective sewer system, utilities charges, and overbilling for wastewater services.

205.    Ms. Bell has suffered a diminution of value of her property due to the defective sewer system and her incidents of flooding and sewage backup.

206.    Had Ms. Bell known that the Signature Club had a private vacuum sewer system that was inadequate for use or otherwise defective, and that the system would cause flooding, sewage backups, and noxious odors, she would have never purchased her home.

207.    Had Ms. Bell known that she would be overbilled for wastewater utilities and would have to pay fees and assessments to repair and maintain the defective sewer system, she would have never purchased her home.

208.    Ms. Bell began suffering damages and harm due to the acts and omissions of the Defendants alleged herein on the date she took possession of her home, and her damages and harm continue through present day.

***Plaintiff Xana Colvin***

209.    Plaintiff Xana Colvin resides in the Signature Club community at 16723 Caribbean Way, Accokeek, Maryland 20607.

210.    Ryan Homes built Ms. Colvin's home.

211.    Ms. Colvin purchased her home from Ryan Homes on March 4, 2021.  She paid $352,990 for her home.

212.    When she purchased her home, Ryan Homes did not disclose the fact that Signature Club had a private vacuum sewer system, nor did they describe in any manner the nature or type of the system.

213.    When Ms. Colvin purchased her home, Ryan Homes did not disclose the nature or amount of assessments, fees, and costs that would be paid by Ms. Colvin arising from the private sewer system at Signature Club.

214.    Ms. Colvin has experienced sewage backup and flooding on numerous occasions. Ms. Colvin experienced these backup and flooding events in August 2021 (two separate incidents), July 2022, August 2022, and May 28, 2023.

215.    The backup and sewage events experienced by Ms. Colvin caused damage that required repairs and financial expenditures.

216.    Ms. Colvin has experienced and continues to experience noxious odors from the sewer system in the Signature Club community.

217.    Ms. Colvin has experienced and continues to experience noxious odors and discoloration in her tap water, drains, and toilet.

218.    Ms. Colvin has suffered financial damages in the form of assessments and fees to repair and maintain the defective sewer system, utilities charges, and overbilling for wastewater services.

219.    Ms. Colvin has suffered a diminution of value of her property due to the defective sewer system and her incidents of flooding and sewage backup.

220.    Had Ms. Colvin known that the Signature Club had a private vacuum sewer system that was inadequate for use or otherwise defective, and that the system would cause flooding, sewage backups, and noxious odors, she would have never purchased her home.

221.    Had Ms. Colvin known that she would be overbilled for wastewater utilities and would have to pay fees and assessments to repair and maintain the defective sewer system, she would have never purchased her home.

222.    Ms. Colvin began suffering damages and harm due to the acts and omissions of the Defendants alleged herein on the date she took possession of her home, and her damages and harm continue through present day.

***Plaintiff Carlos Colvin***

223.    Plaintiff Carlos Colvin resides in the Signature Club community at 16723 Caribbean Way, Accokeek, Maryland 20607.

224.    Ryan Homes built Mr. Colvin's home.

225.    Mr. Colvin purchased his home from Ryan Homes on March 4, 2021.  He paid $352,990 for his home.

226.    When Mr. Colvin purchased his home, Ryan Homes did not disclose the fact that Signature Club had a private vacuum sewer system, nor did they describe in any manner the nature of the system.

227.    When Mr. Colvin purchased his home, Ryan Homes did not disclose the nature or amount of assessments, fees, and costs that would be paid by Mr. Colvin arising from the private sewer system at Signature Club.

228.    Mr. Colvin has experienced sewage backup and flooding on numerous occasions. Mr. Colvin experienced these backup and flooding events in August 2021 (two separate incidents), July 2022, August 2022, and May 28, 2023.

229.    The backup and sewage events experienced by Mr. Colvin caused damage that required repairs and financial expenditures.

230.    Mr. Colvin has experienced and continues to experience noxious odors from the sewer system in the Signature Club community.

231.    Mr. Colvin has experienced and continues to experience noxious odors and discoloration in his tap water, drains, and toilet.

232.    Mr. Colvin has suffered financial damages in the form of assessments and fees to repair and maintain the defective sewer system, utilities charges, and overbilling for wastewater services.

233.    Mr. Colvin has suffered a diminution of value of his property due to the defective sewer system and his incidents of flooding and sewage backup.

234.    Had Mr. Colvin known that the Signature Club had a private vacuum sewer system that was inadequate for use or otherwise defective, and that the system would cause flooding, sewage backups, and noxious odors, he would have never purchased his home.

235.    Had Mr. Colvin known that he would be overbilled for wastewater utilities and would have to pay fees and assessments to repair and maintain the defective sewer system, he would have never purchased his home.

236.    Mr. Colvin began suffering damages and harm due to the acts and omissions of the Defendants alleged herein on the date he took possession of his home, and his damages and harm continue through present day.

***Plaintiff Kymm Watson***

237.    Plaintiff Kymm Watson resides in the Signature Club community at 16600 Tortola Drive, Accokeek, Maryland 20607.

238.    Caruso Homes built Ms. Watson's home.

239.     Ms. Watson purchased her home from Signature 2016 Residential, Caruso Homes, and Caruso Signature Club Mgt on July 8, 2021.  She paid $614,485 for her home.

240.     When Ms. Watson purchased her home, Caruso Homes, Signature 2016 Residential, and Caruso Signature Club Mgt did not disclose the fact that Signature Club had a private vacuum sewer system, nor did they describe in any manner the nature of the system.

241.     When Ms. Watson purchased her home, Caruso Homes, Signature 2016 Residential, and Caruso Signature Club Mgt did not disclose the nature or amount of assessments, fees, and costs that would be paid by Ms. Watson arising from the private sewer system at Signature Club.

242.     Ms. Watson has experienced and continues to experience noxious odors from the sewer system in the Signature Club community.

243.     Ms. Watson has experienced and continues to experience noxious odors and discoloration in her tap water, drains, and toilet.

244.     Ms. Watson has experienced and continues to experience soot-like residue left behind by the water in her home.

245.     Ms. Watson has suffered financial damages in the form of assessments and fees to repair and maintain the defective sewer system, utilities charges, and overbilling for wastewater services.

246.     Ms. Watson has suffered a diminution of value of her property due to the defective sewer system.

247.     Had Ms. Watson known that the Signature Club had a private vacuum sewer system that was inadequate for use or otherwise defective, and that the system would cause flooding, sewage backups, and noxious odors, she would have never purchased her home.

248.     Had Ms. Watson known that she would be overbilled for wastewater utilities and would have to pay fees and assessments to repair and maintain the defective sewer system, she would have never purchased his home.

249.     Ms. Watson began suffering damages and harm due to the acts and omissions of the Defendants alleged herein on the date she took possession of his home, and her damages and harm continue through present day.

## CLASS ACTION ALLEGATIONS

250.     Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of the provisions of Rule 23.

251.     Plaintiffs seek to represent the following Class:

**All persons who have purchased a home in the Signature Club community in Accokeek, Maryland.**

252.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate and as the parties engage in discovery.

253.     **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class Members remains unknown at this time, upon information and belief, there are in excess of 300 putative Class Members who will be ascertainable through discovery.

254.   **Commonality**:  This action involves common questions of law and fact, which predominate over questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to the following:

a.   Whether the private sewer system at Signature Club is defectively designed;

b.   Whether the private sewer system at Signature Club is defectively manufactured;

c.   Whether the private sewer system at Signature Club is defectively installed;

d.   Whether the private sewer system at Signature Club is and has been improperly or inadequately maintained;

e.   Whether and when the Defendants knew or should have known that the private sewer system at Signature Club was inadequate for use or otherwise defective;

f.   Whether the acts and omissions of the Defendants have caused flooding and sewage backups into Signature Club homes and properties;

g.   Whether the acts and omissions of the Defendants have caused noxious odors in the Signature Club community;

h.   Whether Plaintiffs and Class Members have been financially harmed due to the alleged defects in the private sewer system;

i.   Whether Plaintiffs and Class Members have been harmed by flooding, sewage backups, noxious odors, and environmental nuisance in the Signature Club Community;

j.   Whether Plaintiffs and the Class Members have been overbilled for wastewater utilities and suffered harm;

k.   Whether Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA have misled or otherwise deceived

Plaintiffs and the Class Members in their representations about the private sewer system at Signature Club;

l.   Whether Caruso Homes, Ryan Homes, Signature 2016 Residential, and Caruso Signature Club Mgt have been unjustly enriched; and

m.   Whether Plaintiffs and the Class Members are entitled to equitable and/or injunctive relief.

255.   **Commonality**:  Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members have been injured through the common misconduct described herein and were subject in the same manner to the Defendants' negligent, unfair, deceptive, and unlawful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

256.   **Adequacy**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members, and the infringement of the rights and damages Plaintiffs have suffered are typical of other Class Members.  Plaintiffs have retained counsel experienced in complex civil litigation and class action practice, and Plaintiffs intend to prosecute this action vigorously.

257.   **Superiority**:  Class litigation is an appropriate method for the fair and efficient adjudication of the claims involved.  Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.  Class action treatment will permit the

adjudication of relatively modest claims by certain Class Members who could not otherwise afford to litigate a complex claim against numerous corporate defendants.  For those Class Members who could afford to litigate such a claim, it would still be economically impractical and highly inefficient.  If the Plaintiffs and Class Members were forced to file individual actions, it would create the risk of inconsistent results and would be unnecessary and duplicative of this litigation.  If the Plaintiffs and Class Members were forced to file individual actions, the cost of individual suits could unreasonable consume the amounts that would be recovered by the individual Plaintiffs.  Multiple separate lawsuits also would not serve the interests of judicial economy.

258.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

259.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (Plaintiffs v. Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, VIKA Maryland, Delmarva Site Development, Ryan Homes, and Airvac)

260.    Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

261.    At all times relevant hereto, Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, VIKA Maryland, Delmarva Site Development, Ryan Homes, and Airvac were responsible, in whole or in part, for the development, construction, design, manufacture, installation, and maintenance of the Signature Club private sewer system.

41

262.    At all times relevant hereto, these Defendants owed a duty to Plaintiffs and the alleged Class Members to use reasonable and due care in developing, constructing, designing, manufacturing, installing, and maintaining the private sewer system.

263.    Defendants breached their duty of care to the Plaintiffs and Class Members by failing to use reasonable and due care in a number of ways, including but not limited to the following acts and omissions:

    a.  Designing and installing a sewer system that was unfit for reasonable and foreseeable use;

    b.  Manufacturing a sewer system in a manner that rendered it unreasonably susceptible to failure under reasonable and foreseeable use;

    c.  Improperly installing a sewer system such that it would be free of defect and otherwise could adequately and safely serve the residents of Signature Club;

    d.  Improperly maintaining a sewer system such that it would be free of defect and otherwise could adequately and safely serve the residents of Signature Club;

    e.  Failing to redesign, retrofit, or otherwise modify the sewer system design to adequately and safely serve the residents of Signature Club;

    f.  Failing to comply with and otherwise violating applicable construction codes in the development, installation, and maintenance of the Signature Club sewer system.

    g.  Failing to properly and timely test and inspect the sewer system; and

    h.  Failing to adequately and timely repair the sewer system when they knew or should have known that the system was defective or otherwise inadequate to safely serve the residents of Signature Club.

264.     As a direct and proximate result of the negligence of the Defendants, as set forth above, Plaintiffs and the alleged Class Members have suffered damages in an amount to be determined at trial.

## COUNT II
## NEGLIGENCE - MANAGEMENT
**(Plaintiffs v. Defendants Caruso Homes, Caruso Signature Club Mgt, Signature 2016 Residential, and Signature Club HOA)**

265.     Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

266.     At all times relevant hereto, Defendants Caruso Homes, Caruso Signature Club Mgt, Signature 2016 Residential, and Signature Club HOA were responsible, in whole or in part, for the management of the Signature Club community.

267.     At all times relevant hereto, Defendants Caruso Homes, Caruso Signature Club Mgt, and Signature Club HOA owed a duty to Plaintiffs and the alleged Class Members to use reasonable care in the management of the utilities and finances at Signature Club, including in monitoring and billing residents for sewer and water charges, issuing fees and assessments to residents, disclosing fees and assessments to residents, and financing the repairs and maintenance of the sewer system.

268.     Defendants breached their duties to the Plaintiffs and alleged Class Members in failing to adequately maintain and manage the Signature Club community, the common elements of the community (including the sewer system), and the water and sewer utilities.

269.     Defendants breached their duties to the Plaintiffs and alleged Class Members in failing to use reasonable care in managing the finances of the Signature Club community.

270.     As a direct and proximate result of the negligence of the Defendants, as set forth above, the Plaintiffs and alleged Class Members have suffered damages in an amount to be determined at trial.

## COUNT III
## NEGLIGENT MISREPRESENTATION
**(Plaintiffs v. Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes)**

271.     Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

272.     At all relevant times hereto, Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes had a duty to provide honest and accurate information to prospective Signature Club homebuyers so that these consumers could make informed choices on the purchase of a home.

273.     In connection with the sale and prospective sale of homes in the Signature Club community, these Defendants misrepresented or omitted material facts concerning the nature and type of the private sewer system at Signature Club.

274.     In connection with the sale and prospective sale of homes in the Signature Club community, Defendants misrepresented or omitted material facts concerning the costs, assessments, and fees arising from the private sewer system at Signature Club.

275.     In making the misrepresentations, Defendants intended that the misrepresentations would be acted upon by the Plaintiffs and alleged Class Members.

276.     Prospective homebuyers were led to believe through Defendants' misrepresentations and omissions of material fact that the sewer system at Signature Club would be functional, adequate for use, affordable, cost-effective, and safe.

277.   Defendants knew or reasonably should have known that the average, reasonable consumer would be misled by Defendants' misrepresentations and material omissions of fact as to the nature, type, functionality, safety, and cost of the private sewer system.

278.   Plaintiffs and the alleged Class Members justifiably and reasonably relied on Defendants' misrepresentations and omissions of material fact and were induced to purchase their homes at Signature Club.

279.   If Plaintiffs and the alleged Class Members would have received true and accurate information about the nature, type, functionality, safety, and cost of the private sewer system, they would have either not purchased their homes or would have paid substantially less for them.

280.   As a direct and proximate result of the negligence of the Defendants, as set forth above, Plaintiffs and the alleged Class Members have suffered damages in an amount to be determined at trial.

**COUNT IV**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**Md. Code. Com. Law § 13-101, *et seq.***
**(Plaintiffs v. Defendants Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA)**

281.   Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

282.   Defendants Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA engaged in false and misleading statements to Plaintiffs and the Class Members in violation of the Maryland Consumer Protection Act in the following ways:

    a.   Misrepresenting that the Signature Club sewer system was functional;

    b.   Misrepresenting that the Signature Club sewer system was adequate for use;

    c.   Misrepresenting that the Signature Club sewer system was cost-effective;

    d.   Misrepresenting that the Signature Club sewer system was safe;

    e.   Misrepresenting the cause(s) of sewage backups, flooding, and odors in the Signature Club community; and

    f.   Misrepresenting the true economic cost of the Signature Club sewer system.

283.    Defendants Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA failed to state a material fact that deceived or tended to deceive in violation of the Maryland Consumer Protection Act in the following ways:

    a.   Failing to represent or disclose to prospective homebuyers the true economic cost of the Signature Club sewer system;

    b.   Failing to represent or disclose to prospective homebuyers the nature and type of sewer system;

    c.   Failure to represent or disclose to prospective homebuyers that residents' wastewater was not a public utility; and

    d.   Failing to represent or disclose to prospective homebuyers that the Signature Club sewer system was inadequate for functional and safe use.

284.    Defendants Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA advertised Signature Club homes without the intent to sell them as advertised or offered, in violation of the Maryland Consumer Protection Act, in that they advertised and offered properties as safe, habitable, free of defect, and as having an adequate and functional sewer system.

285.    Defendants Caruso Homes, Ryan Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Signature Club HOA knowingly concealed the true nature and cost of

the sewer system from prospective buyers, in violation of the Maryland Consumer Protection Act.

286.    In engaging in the above-described acts and omissions, the Defendants acted unfairly and deceptively in violation of the Maryland Consumer Protection Act.

287.    Due to the Defendants' violations of the Maryland Consumer Protection Act, Plaintiffs and the Class Members seek statutory damages, actual damages, attorneys' fees and costs, equitable and injunctive relief, and any other relief allowable under the Act.

**COUNT V**
**PRIVATE NUISANCE**
**(Plaintiffs v. All Defendants)**

288.    Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

289.    The acts and omissions of the Defendants, and each of them, as alleged herein, has caused a disturbance in the enjoyment of the Plaintiffs' and alleged Class Members' properties.

290.    The disturbances alleged herein were and continue to be offensive and inconvenient to the Plaintiffs and alleged Class Members and would be offensive and inconvenient to a reasonable person.

291.    The sewage backups, flooding, noxious odors, and water quality issues, as alleged herein, have created conditions that are naturally productive of physical discomfort to persons of ordinary sensibilities, tastes, and habits, have caused and continue to cause an intrusion onto the property and into the homes of the Plaintiffs and alleged Class Members, and have caused and continue to cause an unreasonable interference with the ability of the Plaintiffs and Class Members to enjoy their homes and properties.

292.     As a direct and proximate result of the nuisances alleged above, Plaintiffs and Class Members have suffered a diminution of value of their respective homes, have suffered economic and financial damages, and have been otherwise harmed.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY**
**Md. Code Real Prop. § 10-203**
**(Plaintiffs v. Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes)**

293.     Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

294.     In selling homes to Plaintiffs and Class Members, Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes made an implied warranty that the homes in the Signature Club community would be fit for habitation and that all improvements were constructed according to sound engineering standards and constructed in a workmanlike manner.

295.     Due to sewage backups, flooding, a defective and dysfunctional sewer system, noxious odors, and other issues alleged herein, Plaintiffs' and alleged Class Members' homes were not fit for habitation.

296.     Plaintiffs' and alleged Class Members' properties and improvements thereon were not constructed according to sound engineering standards or constructed in a workmanlike manner.

297.     Accordingly, Defendants breached their implied warranties to Plaintiffs and Class Members.

298.    The conditions rendering Plaintiffs' and Class Members' homes unfit for habitation were not apparent or knowable to a reasonably diligent purchaser at the time the contracts were signed.

299.    As a direct and proximate result of the Defendants' breach of implied warranties, Plaintiffs and the alleged Class Members have suffered damages in an amount to be determined at trial.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Plaintiffs v. Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature**
**Club Mgt, and Ryan Homes)**

300.    Plaintiffs incorporate and reallege all preceding paragraphs of this Complaint as if fully restated herein.

301.    Plaintiffs and the Class Members conferred a benefit on Defendants Caruso Homes, Ryan Homes, Caruso Signature Club Mgt, and Signature 2016 Residential through their purchase of their respective homes and payment of utilities, fees, and assessments.

302.    These Defendants had and continue to have knowledge that this benefit was conferred upon them.

303.    Because of their wrongful acts and misrepresentations and omissions, Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes charged a higher price for Plaintiffs' and Class Members' homes than the homes' true value, and these Defendants obtained money which rightfully belongs to Plaintiffs and Class Members.

304.    Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes have been unjustly enriched at the expense of the Plaintiffs and alleged Class Members.

305.    As a result of this unjust enrichment, Plaintiffs seek an order requiring Defendants Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt, and Ryan Homes to provide adequate restitution to Plaintiffs and Class Members.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class of persons similarly situated, respectfully request that the Court enter judgment in Plaintiffs' favor and against the Defendants as follows:

A.    Enter an Order that this case proceed as a class action;

B.    Enter an Order certifying the class as defined above;

C.    Enter an Order appointing Plaintiffs and Plaintiffs' counsel as representatives for the class;

D.    Award compensatory, actual, general, special, incidental, punitive, and consequential damages in an amount to be determined at trial;

E.    Award statutory damages under the Maryland Consumer Protection Act in an amount to be determined at trial;

F.    Award pre-judgment and post-judgment interest on such monetary relief;

G.    Grant appropriate injunctive, equitable, and/or declaratory relief;

H.    Order Defendants to pay the attorney fees of Plaintiffs and the putative class members; and

I.    Order such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Respectfully submitted,


*/s/ Brian Markovitz*
Brian Markovitz, Esq. (# 20288)
Drew LaFramboise, Esq. (# 1018140)
**JOSEPH, GREENWALD & LAAKE, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770-1417
Ph: (240) 553-1209
F: (240) 553-1740
bmarkovitz@jgllaw.com
dlaframboise@jgllaw.com