## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Erica Bell, *et al.*,

     *Plaintiffs*,

v.

APEX Realty, LLC, *et al.*,

     *Defendants*

No. 24-cv-0157-ABA

## MEMORANDUM OPINION

Named Plaintiffs Erica Bell ("Bell"), Xana Colvin and Carlos Colvin ("the Colvins"), and Kymm Watson ("Watson") have sued Defendants on their own behalf and on behalf of others similarly situated. Plaintiffs allege that Defendants are responsible for an allegedly defective sewer system in Plaintiffs' housing community. Defendants have filed seven motions to dismiss all thirteen counts of the amended complaint. For the reasons stated below, the Court will grant the motions in part and deny them in part.

BACKGROUND ................................................................................................ 2

STANDARD OF REVIEW ............................................................................... 11

DISCUSSION ................................................................................................... 11

  I.   Plaintiffs' Group Pleading with Respect to the Caruso Defendants ...................... 11

  II.  Strict Liability Claim Against AirVac (Count 1) .................................................... 14

  III. Negligence (Counts 2–4) ....................................................................................... 16

     A.   Economic Loss Doctrine ................................................................................... 18

     B.   Duty and Breach .............................................................................................. 21

     C.   Contractual Statute of Limitations .................................................................. 30

  IV. Negligent Misrepresentation (Counts 5 and 6) ..................................................... 35

  V.  Violations of the MCPA (Counts 7 and 8) .............................................................. 38

     A.   Ryan Homes ..................................................................................................... 38

     B.   NVR Services .................................................................................................... 41

C.   Caruso Homes, Apex, and Signature 2016 Residential ....................................42

VI.   Private Nuisance (Count 9).................................................................................44

A.   Signature Club HOA ...................................................................................45

B.   Caruso Homes, Caruso Signature Club Mgt., and  Signature 2016 Residential 47

C.   VIKA and Delmarva...................................................................................48

VII.   Breach of Express Warranties (Counts 10 & 11) and Breach of Implied Warranties (Counts 12 and 13) ......................................................................................50

A.   Ryan Homes .................................................................................................50

B.   Caruso Homes and Signature 2016 Residential ...............................................52

VIII.   Class Allegations........................................................................................53

CONCLUSION ................................................................................................................53

## BACKGROUND[1]

Ms. Bell, the Colvins, and Ms. Watson (collectively, "Plaintiffs") "are current or past residents of a residential neighborhood in Accokeek, Prince George's County, Maryland called 'Signature Club.'" ECF No. 63 ¶ 1. They allege that they have "suffer[ed] past and continuing harm in the form of property damage, flooding, sewage backup and intrusion of sewage into dwelling spaces and properties, noxious odors, environmental nuisance, financial damages, exposure to health hazards and personal injury, emotional and mental distress, and other damages due to Defendants' acts and omissions" in connection with the private sewage and wastewater system used within the Signature Club property, which Plaintiffs allege is defective. *Id*. ¶¶ 2–3. As noted above, Plaintiffs allege that other members of their community have suffered similar problems, but the questions presented by the pending motions to dismiss focus on whether Ms. Bell, the Colvins, and Ms. Watson have stated claims on their own behalf on which relief can be

---

[1] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

granted. *See also* § VIII, *infra* (discussing that Defendants' requests to strike Plaintiffs' class allegations are premature, as Plaintiffs have not filed a motion for class certification).

Plaintiffs have sued ten Defendants, alleging that each contributed, in different ways, to the sewer problems that they allege have affected their homes:

**Caruso Homes, Inc. ("Caruso")** "is engaged in the business of building and developing residential homes and neighborhoods, including Signature Club." *Id.* ¶ 13. Plaintiffs allege that in 2016, Caruso Homes decided to build a residential community on the Signature Club property after it had been abandoned in 2014 by another developer named TSC/Muma Mattawoman Associates Limited Partnership ("TSC/Muma"). *Id.* ¶¶ 26 & 42. Plaintiffs have not sued TSC/Muma. Before abandoning the project, TSC/Muma had built some of the infrastructure for the neighborhood, including having the "sewage and wastewater pumping station" designed and built by Defendant VIKA Maryland, LLC. *Id.* ¶ 33. A vacuum pump designed by Defendant Airvac, Inc. was put into the pumping station at that time. *Id.* ¶ 34. TSC/Muma's original design for the Signature Club property was for 315 assisted living condominium units. *Id.* ¶¶ 25–26.

**Caruso Signature Club, Mgt., LLC ("Caruso Signature Club Mgt.")** and **Signature 2016 Residential, LLC ("Signature 2016 Residential")** were "formed and [are] managed . . . by Caruso Homes" and are "engaged in the business of acquiring, holding, owning, improving, developing, leasing, managing, subdividing, pledging, and borrowing money against Signature Club and improvements thereon." *Id.* ¶¶ 14, 17. Plaintiffs allege that on November 14, 2016, Caruso Homes formed Signature 2016 Residential to purchase the Signature Club property and complete its development. *Id.*

¶¶ 44–45. Plaintiff Watson purchased her home, which was built by Caruso Homes, from Signature 2016 Residential on July 8, 2021. *Id.* ¶¶ 279–80.

**Signature Club Homeowners Association, Inc.** ("Signature Club HOA"), "was formed and is managed . . . by Caruso Homes" and "is engaged in the business of managing and maintaining Signature Club." *Id.* ¶ 19.

**Apex Realty, LLC ("Apex")** "was formed and is managed . . . by Caruso Homes" and "is engaged in the business of providing real estate services with respect to Caruso Homes properties for sale." *Id.* ¶ 18. According to Plaintiffs, Apex "employs and/or contracts with Real Estate Brokers who[] . . . are responsible for providing accurate information to multiple listing service (MLS) databases about Caruso Homes properties for sale, including homes in the Signature Club community." *Id.* Plaintiffs allege that, when Apex listed the Signature Club properties for sale, it erroneously listed them as being connected to a public sewer system rather than relying on a private sewer system. *Id.* ¶¶ 110 & 281.

**NVR, Inc., doing business as Ryan Homes ("Ryan Homes")** is, like Caruso Homes, "engaged in the business of building and developing residential homes and neighborhoods, including Signature Club." *Id.* ¶ 15. The homes purchased by Plaintiffs Bell and the Colvins were built and sold by Ryan Homes. *Id.* ¶¶ 224–225, 243–44, 261–62. Plaintiffs allege that Caruso and Ryan Homes both began building houses in Signature Club in 2019. *Id.* ¶ 82.

**NVR Services, Inc. ("NVR Services")** "was a subsidiary or alter ego of Ryan Homes that was managed [and] owned . . . by Ryan Homes." *Id.* ¶ 16. Plaintiffs allege that "NVR Services was engaged in the business of performing real estate services with respect to Ryan Homes properties for sale" and that "NVR Services employed and/or

contracted with Real Estate Brokers who[], as agents or apparent agents of NVR Services and/or Ryan Homes, were responsible for providing accurate information to multiple listing service (MLS) databases about Ryan Homes properties for sale, including homes in the Signature Club community." *Id.* Plaintiffs allege that, like Apex, NVR Services falsely represented in the Ryan Homes listings that the Signature Club homes were part of a public sewer system rather than a private sewer system. *Id.* ¶¶ 109, 226, 245, 263.

**VIKA Maryland ("VIKA")** "is engaged [in] the business of rendering engineering, planning, and design services to the construction industry, and was involved in and/or responsible for engineering, planning, and design of Signature Club and the Signature Club sewage and wastewater system." *Id.* ¶ 20. Plaintiffs allege that, in addition to having originally designed and built the "sewage and wastewater pumping station" for TSC/Muma for the Signature Club property in 2014 as noted above, VIKA was later hired by Caruso Homes in 2017 to amend the original site plan for Signature Club to include "217 single family homes and 95 townhome units." *Id.* ¶¶ 33, 46–47. Although VIKA contends that the new site plan (217 single family homes plus 95 townhomes) entailed a similar total number of units and thus demand on a sewer system as the original site plan (which called for 315 assisted living condominium units), Plaintiffs allege that the modified plan increased demand on the sewer system, but that the system was not modified from "the existing pump house and pumping station." *Id.* ¶¶ 49–50. Plaintiffs allege that the existing infrastructure was not adequate for the sewage output that the new site plan would entail. *Id.* ¶ 51. Plaintiffs allege that VIKA "was responsible for the design and layout of the vacuum main, the valve pits, and the lateral pipes in the sewer system." *Id.* ¶ 54.

**Airvac, Inc. ("Airvac")** "is engaged in the business of designing, manufacturing, installing, and maintaining vacuum sewage and wastewater systems, including the sewer system at Signature Club." *Id.* ¶ 22. Airvac "manufactured key components of the sewer system, including but not necessarily limited to the butterfly valves in the pumping station" and the "vacuum sewer pump." *Id.* ¶¶ 22, 34. Plaintiffs allege that "Airvac was responsible for ensuring that the [amended site] design would work with the existing vacuum sewer system and pump station." *Id.* ¶ 55.

Finally, **Delmarva Site Development, Inc. ("Delmarva")** "is engaged in the business of preconstruction and site development, including the site development of the Signature Club development." *Id.* ¶ 21. Delmarva "worked closely with VIKA Maryland to develop and install the sewer system in accordance with the amended site plan that was created by VIKA Maryland." *Id.* Plaintiffs allege that in 2019, Caruso Homes and Signature 2016 Residential hired Delmarva to install sewer lines and other elements of the sewer system. *Id.* ¶ 81.

Those are the companies Plaintiffs have sued. The following is what Plaintiffs allege they did wrong, and the related context.

"In early 2021, residents began purchasing and moving into homes in the Signature Club development." *Id.* ¶ 107. "Beginning in the summer of 2021, Signature Club residents began experiencing flooding and sewage backups in their homes, driveways, and properties," which they allege continue to the present. *Id.* ¶¶ 113–14. Plaintiffs allege that the sewer system was not properly engineered or built and that Defendants are liable for the damages. For example, Plaintiffs allege that "Caruso Homes, Signature 2016 Residential, VIKA Maryland, and Delmarva Site Development failed to ensure that all the sewer valves were installed with an alarm," *id.* ¶ 59, and that

Airvac and VIKA did not properly install backflow prevention devices to "protect the connected home(s) against backup of sewage," *id.* ¶¶ 85–86, 96. Plaintiffs allege that Ryan Homes and Caruso Homes likewise should have installed backflow preventers but did not do so in "many Signature Club residents' homes" (though it is unclear from the complaint whether Plaintiffs' homes, as opposed to putative class members' homes, lacked such devices). *Id.* ¶ 97. Plaintiffs allege that, at one point, "[t]he butterfly valve in the pump house station—designed by Airvac and VIKA Maryland—was identified by [the Washington Suburban Sanitary Commission ('WSSC')] as a point of failure in the sewer system." *Id.* ¶ 185.

Plaintiffs allege that "Caruso Homes, Signature 2016 Residential, and VIKA Maryland did not take adequate measures to ensure that the existing pumping station and vacuum sewer technology . . . would have sufficient pumping capacity . . . nor did they modify or redesign the sewer system to account for this substantial change in demand." *Id.* ¶ 51. Plaintiffs further contend that "Ryan Homes-built homes did not have floor drains that were above the height of the air release mechanisms in the front yards of the homes" and that Caruso Homes and Signature Club HOA "determined that this discrepancy contributed to sewage back-ups into some of the homes." *Id.* ¶ 187. Plaintiffs allege that despite the fact that Apex and NVR Services "were responsible for providing accurate information to multiple listing service (MLS) databases," *id.* ¶¶ 16 & 18, they incorrectly listed the properties as having a public sewer system, *id.* ¶¶ 109 & 110, and that if Plaintiffs had "received true and accurate information [from Apex and NVR Services] about the nature, type, functionality, safety, and cost of the private sewer system, they would have either not purchased their homes or would have paid substantially less for them," *id.* ¶¶ 344, 355.

Plaintiffs allege that Defendants investigated the sewer problems and attempted various remedies, but that those remedies have not fixed the problems. For example, Plaintiffs allege that "Signature Club HOA hired a company called Inframark to inspect and maintain the sewage and wastewater system" and in September 2021, Inframark found "debris in the wastewater lines and numerous dysfunctional vacuum sewer pits," loose couplings and "at least one deformation in the wastewater lines," and "that the vacuum pump station was dysfunctional and not performing as designed." *Id.* ¶¶ 100, 119–21. According to Plaintiffs, "[i]n September 2022, Signature Club HOA engaged a sewer maintenance company called JCI Environmental ('JCI') . . . to investigate the cause of the widespread sewage backups." *Id.* ¶ 153. In the fall of 2023, Caruso Homes told the residents that "they had purchased a new pump for the pump station and refurbished the two existing pumps and installed a 'new butterfly valve.'" *Id.* ¶ 191. Nonetheless, according to Plaintiffs, "these purported efforts have not remediated the issues" and instead "residents have continued experiencing flooding, sewage backups, noxious odors, and problems with water." *Id.* ¶ 193.

Plaintiffs allege that Defendants' actions and inaction have caused damages, including "[f]inancial damages related to the repair and maintenance of the defective sewer system," "[i]ncreased homeowner's insurance premiums," "[d]eprivation of the fair and full value of residents' payments for wastewater and sewage utilities" and "of residents' homes and properties," "[t]he loss and diminution of value in residents' homes and properties," as well as "[o]ver-billing for water services" due to Signature Club HOA charging the wrong rate. *Id.* ¶¶ 194, 200; *see also id.* ¶ 116 ("These sewage backup and flooding events have caused damage to numerous homes and properties in the Signature Club development."); *id.* ¶ 222 ("Residents who have experienced backups

of raw sewage into their finished basements and storage rooms have had personal effects, including those with sentimental value, damaged.").

Plaintiffs contend that the sewer backups and related issues have put them at risk of sickness from "bacteria, viruses, parasites and other contaminants that can cause disease and can make a contaminated house unfit for living," *id*. ¶ 214, and "toxic gases, mainly hydrogen sulfide, carbon monoxide, and 'sewer gas,' also known as methane, leading to the risk of inhaling airborne contaminants," *id*. ¶ 217. Plaintiffs contend that "Plaintiffs, their family members, and even their pets, have become ill with gastrointestinal sicknesses with much greater frequency since moving to the Signature Club community," allegedly "due to their exposure to raw sewage and other contaminants in their drinking water." *Id*. ¶ 219; *see also id*. ¶ 173 ("The sewage backups and flooding, continuous and noxious odors, and discolored and foul-smelling water have injured Plaintiffs and the alleged Class Members."); *id*. ¶ 211 ("The sewage backups and flooding events within the Signature Club community posed and continue to pose a significant health hazard to Signature Club residents and others."). Finally, Plaintiffs allege that Defendants have caused them "emotional pain and suffering and the loss of enjoyment and use of their Properties." *Id*. ¶ 222.

Plaintiffs filed their initial complaint on January 17, 2024. ECF No. 1. After Defendants filed motions to dismiss, Plaintiffs filed the current amended complaint on July 8, 2024. ECF No. 63. The amended complaint has thirteen counts:

Count 1 – Strict liability/manufacturing defect: all Plaintiffs against AirVac.

Count 2 – Negligence: Plaintiffs Bell and The Colvins against Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt., Signature Club HOA, VIKA Maryland, Delmarva Site Development, Ryan Homes, and Airvac.

Count 3 – Negligence: Plaintiff Watson against Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt., Signature Club HOA, VIKA Maryland, Delmarva Site Development, and Airvac.

Count 4 – Negligent management: All Plaintiffs against Caruso Homes, Caruso Signature Club Mgt., Signature 2016 Residential, and Signature Club HOA.

Count 5 – Negligent misrepresentation: Plaintiffs Bell and The Colvins against Ryan Homes and NVR Services.

Count 6 – Negligent misrepresentation: Plaintiff Watson against Caruso Homes, Apex Realty, LLC, Signature Club 2016 Residential, and Caruso Signature Club Mgt.

Count 7 – Violation of Maryland Consumer Protection Act (MCPA)", Md. Code., Com. Law § 13-101: Plaintiffs Bell and The Colvins against Ryan Homes and NVR Service.

Count 8 – Violation of the MCPA: Plaintiff Watson against Caruso Homes, Apex Realty, and Signature 2016 Residential.

Count 9– Private Nuisance: All Plaintiffs against Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt., Signature Club HOA, VIKA Maryland, Delmarva Site Development, and Airvac.

Count 10 – Breach of express warranty/ Md. Code Real Prop. § 10-202: Plaintiffs Bell and The Colvins against Ryan Homes.

Count 11 – Breach of express warranty: Plaintiff Watson against Caruso Homes and Signature 2016 Residential.

Count 12 – Breach of implied warranty/ Md. Code Real Prop. § 10-203: Plaintiffs Bell and The Colvins against Ryan Homes.

Count 13 – Breach of implied warranty: Plaintiff Watson against Caruso Homes and Signature 2016 Residential.

The Defendants then filed the present motions to dismiss. ECF Nos. 69, 70, 71, 72, 73, 76, 79. Plaintiffs responded, ECF Nos. 83, 84, 85, 86, 87, 88, 92, and most Defendants replied, ECF Nos. 91, 93, 94, 95, 96, 97. The Court held a motions hearing on August 12, 2025.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## DISCUSSION

## I.    Plaintiffs' Group Pleading with Respect to the Caruso Defendants

Before discussing the merits of the claims, the Court will address the argument of Defendants Caruso Homes, Caruso Signature Club Mgt., Signature 2016 Residential,

and Apex (which jointly filed a motion to dismiss) that "Plaintiffs' claims for negligent misrepresentation, violation of the Maryland Consumer Protection Act and the Breach of Express and Implied Warranty must fail against" them because Plaintiffs have impermissibly engaged in group pleading, contrary to Federal Rules of Civil Procedure 8 and 9, by failing to specifically allege what each Defendant did and the claims against them. ECF No. 76-1 at 8.[2] They contend that Plaintiffs have impermissibly grouped their claims against these Defendants in count 6 for negligent misrepresentation (by all Plaintiffs against Caruso Homes, Caruso Signature Club Mgt., Signature 2016 Residential), in count 8 for violation of the MCPA (Plaintiff Watson against Caruso Homes, Apex Realty, and Signature 2016 Residential), and in Counts 11 and 13 for breach of express and implied warranties (Plaintiff Watson against Caruso Homes and Signature 2016 Residential). They note that Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud claims with particularity, and that the MCPA claim also "sounds in fraud, [and] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed. R. Civ. P. 9(b)).

Plaintiffs do generally group these Defendants together in their allegations and generally allege that they are all operated in concert. *See, e.g.*, ECF No. 63 ¶ 14 ("Caruso Signature Club Mgt was formed and is managed, owned, controlled, and/or operated by Caruso Homes"), *id.* ¶ 17 ("Signature 2016 Residential was formed and is managed, owned, controlled, and/or operated by Caruso Homes and Caruso Signature Club Mgt."), *id.* ¶ 18 ("Apex Realty was formed and is managed, owned, controlled, and/or

---

[2] Page citations are to the ECF page numbers, which may differ from the pagination used by the parties.

operated by Caruso Homes and/or agents, officers and employees of Caruso Homes."),
*id*. ¶ 73 ("[t]he principal office of Signature Club HOA listed in the Articles of Revival is
the headquarters of Caruso Homes, Signature 2016 Residential, and Caruso Signature
Club Mgt."), *id*. ¶ 74 ("Signature Club HOA is and has always been managed, controlled,
and operated by executives, officers, employees, members, and/or agents of Caruso
Homes, Signature 2016 Residential, and Caruso Signature Club Mgt."), *id*. ¶ 280 ("Ms.
Watson purchased her home from Signature 2016 Residential, Caruso Homes, and
Caruso Signature Club Mgt on July 8, 2021."), and *id*. ¶ 282 ("[t]he Purchase Agreement
signed by Edmund Levendusky, Vice President and Division Manager, on behalf of
Signature 2016 Residential, Caruso Homes, and Caruso Signature Club Mgt.,
represented that the home would be" properly constructed and in compliance with all
building codes.").

As Plaintiffs argue, however, group pleading is allowable where it is "plausible
that each defendant was involved in all of the facts as alleged." *McPherson v. Baltimore
Police Dep't*, 494 F. Supp. 3d 269, 280 (D. Md. 2020) (quoting S*print Nextel Corp. v.
Simple Cell, Inc.*, Case No. 13-cv-617-CCB, 2013 WL 3776933, at *2 (D. Md. July 17,
2013)). Given Plaintiffs' allegations—which the Court must accept as true at this stage—
that these Defendants are all owned and controlled by the same entities, worked in
concert, and that one individual signed the purchase agreements on behalf of multiple
Defendants, it is permissible for Plaintiffs to have pled the negligence claims against
these Defendants together. As Plaintiffs note, for their MCPA claims, they have
articulated the specific misrepresentations or omissions made by each relevant
Defendant. ECF No. 63 ¶¶ 370–71. Finally, as Plaintiffs also note, their breach of

warranty claims are limited to Caruso Homes and Signature 2016 Residential, who allegedly jointly sold the house at issue. *Id.* ¶ 280.

At the pleading stage, and given the allegations of interconnectedness between these Defendants, the Court will not dismiss the claims against Defendants Caruso Homes, Caruso Signature Club Mgt., Signature 2016 Residential, and Apex due to group pleading. The amended complaint gives these Defendants "fair notice of what the . . . claim[s] [are] and the grounds upon which [they] rest[ ]." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## II.    Strict Liability Claim Against AirVac (Count 1)

In count 1, Plaintiffs allege that Airvac is strictly liable for the damage caused by an alleged defect in Airvac's butterfly valve that was used in connection with the sewer system pump, asserting that "[u]pon information and belief, this butterfly valve was not manufactured in accordance with the product's design specifications or was assembled improperly in the manufacturing process or was otherwise manufactured in a manner that rendered it unreasonably dangerous for its intended use." ECF No. 63 ¶ 308; *see also id.* ¶ 310 (alleging that "the valve was prone to fail"). Plaintiffs further allege that "[i]n 2023, the butterfly valve was determined [by WSSC] to be one point of failure in the sewer system" and that "defects in the valve caused it to become stuck open, preventing the sewer system from building enough pressure for the vacuum pumps to operate effectively." *Id.* ¶¶ 185, 309.

Strict liability due to "[a] product defect can arise from the design of the product, a deficiency in its manufacture, or from the absence or inadequacy of instructions or warnings as to its safe and appropriate use." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407 (D. Md. 2001) (citing *Simpson v. Standard Container Co.*, 72 Md.

App. 199, 203 (1987)). Here, Plaintiffs allege a manufacturing defect. To plead a strict liability claim based on a manufacturing defect under Maryland law, a litigant must allege that:

> (1) the plaintiff was the user or consumer of an alleged defective product;
>
> (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product;
>
> (3) at the time of sale the product was defective;
>
> (4) the product reached the plaintiff without substantial change in the condition in which it was sold;
>
> (5) the defect made the product unreasonably dangerous to the plaintiff; and
>
> (6) the defect proximately caused plaintiff's injuries.

*Id.* at 406–07 (citing *Phipps v. General Motors Corp.*, 278 Md. 337 (1976)).

Plaintiffs' main allegations supporting this claim, that "upon information and belief" the butterfly valve was not manufactured per the design specifications, "was assembled improperly," or was "otherwise manufactured in a manner that rendered it unreasonably dangerous for its intended use," ECF No. 63 ¶ 308, are "[b]are legal conclusions" that "are not entitled to the assumption of truth and are insufficient to state a claim." *King*, 825 F.3d at 214. Plaintiffs' second relevant allegation is that the valve failed after several years because it allegedly became stuck open. ECF No. 63 ¶¶ 185, 309. But an allegation that a product eventually failed is not an allegation that it was not manufactured properly. *See Russell v. Ethicon, Inc.,* Case No. 20-cv-1968-GLR, 2021 WL 1530086, at *2 (D. Md. Apr. 19, 2021) (dismissing a manufacturing defect claim because the plaintiff did not "identify any specific defect in the manufacturing

process"). Plaintiffs have made no specific allegations regarding the design of the butterfly valve or how the product "departed from [its] intended design specifications." *Id.*; *see also Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733, 747 (D. Md. 2015) (dismissing a manufacturing defect claim for failure to adequately allege a defect because the plaintiffs did "not indicate what that design [was], nor [did] they point to any specific facts tending to show such deviation"). Because Plaintiffs have not alleged facts showing that the butterfly valve departed from its manufacturing specifications, the manufacturing defect claim against Airvac will be dismissed without prejudice.

## III.    Negligence (Counts 2–4)

In counts 2 and 3, Plaintiffs assert negligence claims against Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt., Signature Club HOA, VIKA, Delmarva, Ryan Homes, and Airvac. Plaintiffs allege that these Defendants "were responsible, in whole or in part, for the development, construction, design, manufacture, installation, and maintenance of the Signature Club private sewer system, or the components thereof," *id.* ¶¶ 315, 320, and that they breached their duties to Plaintiffs as follows:

> a.    *VIKA Maryland, Delmarva Site Development, and Signature 2016 Residential*: Designing and installing a sewer system that was unfit for reasonable and foreseeable use;
>
> b.    *Airvac*: Designing and manufacturing components of a sewer system in a manner that rendered the system unreasonably susceptible to failure under reasonable and foreseeable use, including but not limited to a defective butterfly valve;
>
> c.    *Delmarva Site Development*: Improperly installing a sewer system such that it would be free of defect and could adequately and safely serve the residents of Signature Club;

d. *Caruso Signature Club Mgt, Signature 2016 Residential, and Signature Club HOA*: Improperly maintaining a sewer system such that it would be free of defect[s] and otherwise could adequately and safely serve the residents of Signature Club;

e. *VIKA Maryland, Delmarva Site Development, and Signature 2016 Residential*: Failing to redesign, retrofit, or otherwise modify the sewer system design to adequately and safely serve the residents of Signature Club;

f. *Caruso Homes, Signature 2016 Residential, VIKA Maryland, Delmarva Site Development, and Ryan Homes*: Failing to comply with and otherwise violating applicable construction codes in the development, installation, and maintenance of the Signature Club sewer system and the components thereof. This includes but is not limited to Ryan Homes' [and Caruso Homes'] failure to install backflow preventers within the plumbing systems of these Plaintiffs and Class Members' homes, as well as the failure by Caruso Homes, Signature 2016 Residential, VIKA Maryland, and Delmarva Site Development to ensure installation of backflow preventers and/or backflow containment devices.

g. *Caruso Signature Club Mgt, Signature 2016 Residential, Signature Club HOA and VIKA Maryland*: Failing to properly and timely test and inspect the sewer system; and

h. *Caruso Signature Club Mgt, Signature 2016 Residential, and Signature Club HOA*: Failing to adequately and timely repair the sewer system when they knew or should have known the system was defective or otherwise inadequate to safely serve the community.

*Id.* ¶¶ 316, 322.

In count 4, Plaintiffs assert a negligent management claim against Caruso

Homes, Caruso Signature Club Mgt., Signature 2016 Residential, and Signature Club

HOA, alleging that they "owed a duty to Plaintiffs . . . to use reasonable care in the management of the utilities and finances at Signature Club," *id.* ¶ 326, and that these Defendants breached their duties by "failing to adequately maintain and manage the Signature Club community, the common elements of the community (including the sewer system), and the water and sewer utilities," *id.* ¶ 327, and "failing to use reasonable care in managing the finances of the Signature Club community," *id.* ¶ 328.

To maintain a negligence action, a plaintiff must allege: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 486 (2002) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)). Of these elements, some Defendants argue they owed no duties to Plaintiffs; other Defendants also argue that the negligence claims (as well as the other tort claims) are barred by the economic loss doctrine. The Court will address the economic loss doctrine first.

### A.    Economic Loss Doctrine

"In Maryland, the economic loss doctrine bars recovery when the parties are not in privity with one another or the alleged negligent conduct did not result in physical injury or risk of severe physical injury or death." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611–12 (2017). "Courts imposed this limitation on the recovery of purely economic losses in response to the elimination of the privity requirement in tort law." *Id.* at 612. When a plaintiff relies on a risk of physical injury rendering the economic loss rule inapplicable, courts "examine both the nature of the damage threatened and the probability of damage occurring to determine

whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 533 (1995). "[C]onditions that present a risk to general health, welfare, or comfort but fall short of presenting a clear danger of death or personal injury will not suffice." *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 35 n.5 (1986).

Defendants argue that Plaintiffs allege mostly economic damages in the form of damage to their homes. They further argue that the allegations of personal injury and risk of personal injury are too vague and not serious enough to take this case outside of the economic loss doctrine. At this stage of the case, however, Plaintiffs have adequately alleged a risk of serious injury due to exposure to sewage and "toxic gases," among other forms of non-economic damages, including emotional pain and injury to sentimental personal effects. ECF No. 63 ¶¶ 214, 217, 222. As alleged, the danger caused by the sewage problems is not just a "mere possibility," *Morris*, 340 Md. at 536, but has occurred or is currently occurring, making it imminent and concrete. Regarding actual physical injury, Plaintiffs allege that they, "their family members, and even their pets, have become ill with gastrointestinal sicknesses with much greater frequency since moving to the Signature Club community," allegedly "due to their exposure to raw sewage and other contaminants in their drinking water." ECF No. 63 ¶ 219.

This Court is cognizant that in *Whiting-Turner* the court stated that "[a] claim that defective design or construction has produced a drafty condition that may lead to a cold or pneumonia would not be sufficient," 308 Md. at 35, and that the court in *Morris* held that a plaintiff must show "a clear, serious, and unreasonable risk of death or personal injury." 340 Md. at 533. But for present purposes, the question is whether

Plaintiffs have *alleged* that the sewer problems at issue have put them at risk of serious physical harm, and for the reasons discussed above, they have so alleged given the concrete nature of the risk of injury and possibility of serious illness. Whether Plaintiffs have in fact been physically harmed, or have been put at risk of physical harm sufficient to avoid application of the economic loss doctrine, are separate questions that will require discovery.

Moreover, as stated above, privity between parties will also preclude the application of the economic loss doctrine; a plaintiff may sue a defendant in tort, and recover for purely economic harm without any accompanying physical injury, if the plaintiff was in privity with the defendant. *Bel Air Carpet, Inc.*, 249 Md. App. at 128. Here, there is privity at least between Plaintiffs and the entities that signed their sales agreements, namely Caruso Homes, Signature 2016 Residential, and Ryan Homes. *See* ECF No. 63 ¶ 112 ("Plaintiffs . . . entered into sales contracts with either Caruso Homes, Signature 2016 Residential, or Ryan Homes, depending on the type and specific location of their respective homes."); *id.* ¶ 225 ("Ms. Bell purchased her home from Ryan Homes on August 20, 2021."); *id.* ¶¶ 244 & 262 (alleging that the Colvins "purchased [their] home from Ryan Homes on March 4, 2021") *id.* ¶ 280 ("Ms. Watson purchased her home from Signature 2016 Residential, Caruso Homes, and Caruso Signature Club Mgt on July 8, 2021."), *id.* ¶ 282 ("The Purchase Agreement [was] signed by Edmund Levendusky, Vice President and Division Manager, on behalf of Signature 2016 Residential, Caruso Homes, and Caruso Signature Club Mgt."). Accordingly, as to those

Defendants, Plaintiffs have adequately alleged facts to bring their claims within the privity exception to the economic loss doctrine.[3]

Taking all factual allegations as true and reasonable inferences in Plaintiffs' favor, given Plaintiffs' allegations that there is non-economic harm, physical injury and a serious risk thereof, and privity between Plaintiffs and some Defendants, the economic loss doctrine does not entitle Defendants to dismissal of Plaintiffs' tort claims at the pleadings stage.

### B.    Duty and Breach

Having determined that Plaintiffs have adequately alleged harm beyond economic loss, and privity as to at least some of the Defendants, to avoid application of the economic loss rule at the pleadings stage, the Court now turns to the issue of duty and breach. Three Defendants (Signature Club HOA, Delmarva, and Airvac) argue that, regardless of the application of the economic loss doctrine, they do not owe Plaintiffs a duty that could give rise to a negligence claim and that they did not breach any such duty.

"The duty element in a negligence action is 'an obligation to which the law will give effect and recognition to conform to a particular standard of conduct toward another.'" *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 532 (1986) (quoting J.

---

[3] Courts have found that when parties have an 'intimate nexus," an equivalent to privity exists that also precludes application of the economic loss doctrine. *See Bel Air Carpet, Inc.*, 249 Md. App. at 128 (concluding that in applying the economic loss doctrine, "[w]here the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability") (quoting *UBS Fin. Servs., Inc. v. Thompson*, 217 Md. App. 500, 525 (2014)). Given Plaintiffs' allegations of non-economic injury, the Court need not reach at this time whether there are intimate nexuses between the parties.

Dooley, *Modern Tort Law*, § 3.03, at 18–19 (1982)). It "is a duty imposed by law as a matter of sound policy, for the violation of which a person may be held to respond in damages in tort." *Id.* at 533. "In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Id.* at 534. "[W]here the risk created is one of personal injury," a plaintiff need not show a special relationship like privity or its equivalent and instead, "the principal determinant of duty becomes foreseeability." *Id.* at 535. Where the risk created is one limited to economic loss, a plaintiff must show an intimate nexus or privity. *See* § III. A., above.

As is relevant to some of these Defendants, "architects and [ ] builders" and "contractors doing original work" as well as "those who make repairs, or install parts," have a duty "to use due care in the design, inspection, and construction" of residences that "extend[s] to those persons foreseeably subjected to the risk of personal injury created . . . by a latent and unreasonably dangerous condition resulting from their negligence." *Whiting-Turner*, 308 Md. at 28 & 32 (quoting P*rosser and Keeton on the Law of Torts*, § 104A, at 723 (5th ed. 1985)).

### 1.    Signature Club HOA

Signature Club HOA contends that Plaintiffs' allegations arise from alleged defects in the sewer system's design and construction but that Plaintiffs have not alleged that it had any role in either. Signature Club HOA also argues that the amended complaint instead shows that Signature Club HOA did everything it could to fix the issues once it became aware of them, including hiring Inframark, Airvac, and JCI to inspect the sewer system, ECF No. 63 ¶¶ 100, 153, 188, and engaging in various

corrective steps including "purchasing a new vacuum pump for the system and refurbishing two existing pumps," "[o]rdering and installing a new butterfly valve," "[i]nstituting an incident report process in the event of a system malfunction," and providing "[r]egular preventative maintenance," *id.* ¶ 188. Signature Club HOA argues that these allegations in the amended complaint contradict Plaintiffs' claim that it "[i]mproperly maintain[ed the] sewer system." *Id.* ¶¶ 316(d), 322(d). It argues that the amended complaint describes Signature Club HOA as working diligently to fix a problem it did not cause and, thus, if a duty was owed to Plaintiffs, it did not breach it.

Plaintiffs allege that Signature Club HOA had "a duty to maintain the private sewer system at Signature Club." *Id.* ¶ 79; s*ee also id.* ¶¶ 68, 76–78. Taking all alleged facts as true and reasonable inferences in Plaintiffs' favor, Plaintiffs have adequately alleged a breach of that duty by, for example, failing to timely address the lack of backflow preventers, *id.* ¶ 96, the backups of sewage into homes, *id.* ¶¶ 115–18, the pump station shutting down for multiple days, *id.* ¶ 155, and the sewage smells in the neighborhood, *id.* ¶¶ 160–65. Plaintiffs also allege that after Inframark informed Signature Club HOA that the "vacuum pump station was dysfunctional and not performing as designed," *id.* ¶ 121, Signature Club HOA failed to take appropriate steps, and instead promised residents that the "current sewer system could 'adequately support' the current and maximum intended number of residents in the community," which Plaintiffs allege was not true. *Id.* ¶¶ 151 & 156. Although the question of whether a duty exists is a question of law, *Pendleton v. State*, 398 Md. 447, 461 (2007), "[w]hether [a] party breached [a] legal duty is generally [an] issue for [the] factfinder." 11 *Moore's Federal Practice - Civil* § 56.24, n.20 (2025). Here, Plaintiffs have alleged sufficient facts that, if true, would give rise to a duty by Signature Club HOA, and further have

sufficiently alleged that Signature Club HOA breached that duty by failing to prevent sewage from backing up into their homes, and failing to promptly and fully fix the problems that did arise. Whether the evidence will establish that Signature Club HOA in fact acted unreasonably is a separate question—as it is for all of the negligence claims. The question now is whether the allegations of negligence by Signature Club HOA are sufficient to proceed to discovery. They are.

In connection with the negligence counts against it (counts 2–4), Signature Club HOA also alleges that how it exercised its business judgment while attempting to mitigate the sewer issues is subject to the business judgment rule. "The general rule under Maryland law is that decisions made by a homeowners association's board of directors will not be disturbed unless there is a showing of fraud or bad faith" or gross negligence. *Reiner v. Ehrlich*, 212 Md. App. 142, 155 (2013); *Froelich v. Senior Campus Living LLC*, 355 F.3d 802, 810 (4th Cir. 2004) ("The business judgment rule simply requires courts to defer to the decisions of corporate boards unless a challenger produces evidence establishing that the directors acted fraudulently or in bad faith, . . . or with gross or culpable negligence."). And bad faith "is not simply bad judgment or negligence." *Rite Aid Corp. v. Hagley*, 374 Md. 665, 681 (2003) (quoting *Catterton v. Coale*, 84 Md. App. 337, 342 (1990)).

In counts 2 and 3 for negligence, Plaintiffs do not allege bad faith, thus it is possible that these two counts could be subject to the business judgment rule. In count 4 for negligent misrepresentation, however, Plaintiffs allege that "Defendants' actions and omissions were made in bad faith." ECF No. 63 ¶ 329. More specifically, Plaintiffs allege that Defendants, including Signature Club HOA, "misled residents of the Signature Club community . . . as to the cause of sewage backups, flooding, and environmental

nuisances, and falsely assured residents that all such problems were being addressed and/or that the vacuum sewage system was adequate to meet demand." *Id.* Similarly, Plaintiffs allege that Defendants acted in bad faith by "falsely blaming residents for the sewage backups and other environmental nuisances," "failing to sufficiently address or otherwise investigate known issues in the sewage system when presented with regular, ongoing complaints by residents," "falsely assuring residents that their drinking water was safe when in reality, Defendants had no such knowledge or information," "failing to properly monitor utilities charges, charging residents for water at a commercial rate and being willfully blind to the fact that residents were being overcharged, and consequently allowing substantial charges related to the defective sewage system to be passed down to residents." *Id.* ¶¶ 330–333. As to count 4, taking all alleged facts as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that these allegations of bad faith are sufficient to avoid the business judgment rule at the pleadings stage. Thus, the remainder of this discussion will focus on counts 2 and 3 for negligence.

Plaintiffs argue that the business judgment rule does not apply to counts 2 and 3 because Signature Club HOA's duty to maintain the sewer system was not discretionary; it did not have the option to make a "decision" not to properly maintain the system without violating its duties.

The parties present conflicting unpublished Appellate Court of Maryland (then the Court of Special Appeals) cases on this issue, neither of which has precedential value. *See* Md. Rule 1-104. Plaintiffs cite *Holloway v. Silverwood Homeowners' Ass'n*, where the plaintiff slipped on black ice in a common area of her subdivision and alleged her homeowner's association was liable for negligence. No. 0097, Sept. term, 2018, 2020 WL 736760, at *1 (Md. Ct. Spec. App. Feb. 13, 2020). The homeowner's

association claimed that the business judgment rule barred the claim because it had made an official policy decision that snow was to be removed by a contractor only once it became two inches deep. *Id.* at *3. The court, noting that the business judgment rule "primarily applied to cases involving shareholders who challenge decisions made by the board of directors in corporations," concluded that the rule did not apply because the plaintiff did "not request that this Court interfere with the internal management decisions by" the homeowner's association and instead the plaintiff sought "damages in tort as a result of [the homeowner's association's] negligence." *Id.* at *8; *see also Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 532 (2003) ("The business judgment rule . . . has never precluded full litigation of complaints sounding in tort or contract against the corporation.").

Signature Club HOA cites *Mena v. Council of Unit Owners of Garden Condo. II at Sunset Island*, in which plaintiffs sued their condominium association for agreeing to hold harmless NVR, Inc., the builder of the condominiums, for construction defects and for failing to sue the association's former legal counsel, who had advised the association regarding the release. No. 210 Sept. Term, 2019, 2020 WL 7386369, at *1 (Md. Ct. Spec. App. Dec. 16, 2020). The court held that the business judgment rule could apply to negligence claims and barred these particular claims based on the association's use of its business judgment related to litigation. *Id.* at *5–7.

*Holloway* is more analogous to this case than *Mena*. At its core, this case involves alleged failures to act, which Plaintiffs allege resulted in their injuries, like in *Holloway*, whereas *Mena* involved more traditional business decisions by the defendants. Having found no cases that dictate otherwise, the Court concludes that the business judgment

26

rule does not bar Plaintiffs' negligence claims in counts 2 and 3, at least at the pleadings stage.

For these reasons, the Court will deny Signature Club HOA's motion to dismiss the negligence claims against it.

### 2. Delmarva

Delmarva contends that it was merely a contractor that performed work on the Signature Club property well before Plaintiffs bought their homes, and because there is no relationship between it and Plaintiffs, it owes no duty to Plaintiffs.

Plaintiffs argue that Delmarva had a duty to the foreseeable end users of the sewer system that it installed and retrofitted. ECF No. 63 ¶ 315 (alleging that Delmarva, among other Defendants, owed a duty to Plaintiffs "to use reasonable and due care in developing, constructing, designing, manufacturing, installing, and maintaining the private sewer system or the components thereof"). Plaintiffs contend that Delmarva breached that duty by "installing a sewer system that was unfit for reasonable and foreseeable use" and that could not "adequately and safety serve the residents of Signature Club," "[f]ailing to redesign, retrofit, or otherwise modify the sewer system design to adequately and safely serve the residents of Signature Club," and "[f]ailing to comply with and otherwise violating applicable construction codes in the development, installation, and maintenance of the Signature Club sewer system and the components thereof . . . to ensure installation of backflow preventers and/or backflow containment devices." *Id.* ¶ 316(a), (c), (e), (f).

As stated above, "contractors doing original work" as well as "those who make repairs, or install parts," have a duty of care that "extend[s] to those persons foreseeably subjected to the risk of personal injury created." *Whiting-Turner*, 308 Md. at 28 & 32.

For pleading purposes, and taking all factual allegations as true and reasonable inferences in Plaintiffs' favor, Plaintiffs have adequately alleged that they were foreseeable users of Delmarva's system and, thus, that Delmarva owed them a duty that it breached. As a result, the Court will not dismiss the negligence claims against Delmarva.

### 3.    Airvac

As noted above, Plaintiffs have sued Airvac based on a strict liability manufacturing defect claim (count 1), which the Court concludes has not been adequately pled. But Plaintiffs also allege that Airvac is liable in negligence (counts 2 & 3) because Airvac not only supplied the butterfly valve that Plaintiffs contend was defective, but also was involved in the design and installation of various components of the sewer system.

Airvac argues that it owes no duty to Plaintiffs because "'a contractor owes no duty to the general public for which it may be made responsible in an action in tort for negligence, if it does not perform its contract.'" ECF No. 72-1 at 18 (quoting *Marlboro Shirt Co. v. Am. Dist. Tel. Co.*, 196 Md. 565, 571–72 (1951)). In *Whiting-Turner*, however, the Supreme Court of Maryland limited and distinguished *Marlboro Shirt* from cases like this, where Plaintiffs have adequately alleged a threat of physical injury or injury other than to personal property. 308 Md. at 29–30 (pointing "out that one year after the decision in *Marlboro Shirt* this Court assumed the existence of tort duty on the part of an elevator maintenance contractor in favor of a user of the elevator, notwithstanding the absence of privity") (citing *Otis Elevator Co. v. Embert*, 198 Md. 585 (1951)). Because Plaintiffs adequately alleged non-economic damages as discussed above, *Marlboro Shirt* has no application here.

Airvac also notes that, according to Plaintiffs, its butterfly valve was replaced in 2023, ECF No. 63 ¶¶ 190–91, and thus Airvac argues that any liability ends at that time. But Plaintiffs allege that Airvac did more than manufacture and supply the allegedly defective butterfly valve. Rather, it "was responsible for ensuring that the design would work with the existing vacuum sewer system and pump station," *id.* ¶ 40, specifically "assured WSSC that the gravity lines were fitted with a backflow prevention device," *id.* ¶ 85, and returned to Signature Club in 2023 to "conduct a system inspection," *id.* ¶ 188. This claim survives dismissal because it is based on Airvac's alleged actions beyond the manufacture of the butterfly valve.

Plaintiffs allege that as foreseeable end users of Airvac's vacuum sewage system, it owed them a duty of care. Plaintiffs further allege that Airvac breached its duty because its system and the associated products were not safe for their foreseeable uses. *See Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 780 (D. Md. 2012) (explaining that to avoid a negligence-based products liability claim under Maryland law, "the manufacturer must design and manufacture the product so that it is safe for all reasonably foreseeable uses") (citing *Am. Laundry Mach. Indus. v. Horan*, 45 Md. App. 97 (1980)); ECF No. 63 ¶ 322(b) (alleging that Airvac breached its duty by "[d]esigning and manufacturing components of a sewer system in a manner that rendered the system unreasonably susceptible to failure under reasonable and foreseeable use").

Plaintiffs have adequately alleged that Airvac owed them a duty as the foreseeable end users of the Airvac system, and that Airvac breached that duty by failing to ensure its products were safe for their foreseeable uses. Thus, the Court will not dismiss the negligence claims against Airvac.

### C.    Contractual Statute of Limitations

Ryan Homes argues that the negligence claims against it in counts 2 and 5, and the implied warranty claims in count 12, are barred by the contractual one-year statute of limitations period found in the purchase agreements signed by Plaintiffs Bell and the Colvins. Each of these Plaintiffs' purchase agreements provided that the parties "AGREE THAT ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . , REGARDLESS OF LEGAL THEORY, EXCEPT ANY CLAIMS UNDER THE LIMITED WARRANTY ("CLAIMS"), SHALL BE SUBJECT TO A ONE (1) YEAR LIMITATION OF ACTION PERIOD AND BAR DATE." ECF No. 70-2 and 70-3 ¶ 13.[4]

Contracts may provide a limitations period for claims that is "less than that prescribed in the general statute of limitations." *Order of United Comm'l Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). A contractual limitations period is generally enforceable "provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation." *Coll. of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md. App. 158, 1743 (2000).

---

[4] Because these contracts are integral to the complaint, the Court will consider them without transforming Ryan Homes' motion into one for summary judgment. *Okorie v. Resident Rsch., LLC*, 617 F. Supp. 3d 320, 323 (D. Md. 2022) ("Courts are permitted to consider a document attached to a motion to dismiss 'when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.'") (quoting *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)). Plaintiffs do not dispute that the contracts are authentic and, although Plaintiffs take issue with the Court considering some of Ryan Homes' exhibits (*see* n. 9, below), they do not object to these two. ECF No. 85 at 18 n.4.

Ryan Homes argues that Plaintiffs' allegations against it in these three counts are based on defects or other facts that existed as of the date Plaintiffs closed on their homes and they are, therefore, subject to the one-year limitations period. It is undisputed that Plaintiffs Bell and the Colvins purchased their houses more than one year before Plaintiffs filed this suit.

Plaintiffs do not allege that the contractual limitations provision falls within any of the situations described in *Morabito*.[5] They do argue, however, that equitable estoppel should apply because Ryan Homes took actions that caused Plaintiffs to delay in filing the case. *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 280–81 (4th Cir. 2000) (explaining that "equitable [estoppel] is appropriate only 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'") (quoting *Eng. v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987), *abrogated on other grounds as recognized by Est. of Van Emburgh by & through Van Emburgh v. United States*, 95 F.4th 795, 804 n.3 (4th Cir. 2024); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (explaining that "[t]he statute of limitations will not be tolled on the basis of equitable estoppel unless the [plaintiff's] failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his" claim) (quoting *Price v. Litton Bus. Sys., Inc.*,

---

[5] That renders this case different from *Johnson v. NVR Inc.*, Case No. 23-cv-1280-ABA (D. Md.), which was the subject of some discussion at the hearing.

694 F.2d 963, 965–66 (4th Cir. 1982))[6]; *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (holding, under federal law, that equitable estoppel "applies 'where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline'") (quoting *Pabst Brewing Co.*, 828 F.2d at 1049). But "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Felty*, 818 F.2d at 1129 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)); *Kokotis*, 223 F.3d at 280 ("Equitable tolling is not appropriate where . . . 'the claimant failed to exercise due diligence in preserving his legal rights.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "Equitable estoppel is comprised of three basic elements: 'voluntary conduct' or representation, reliance, and detriment." *Cunninghame*, 364 Md. at 289–90.

Plaintiffs allege that equitable estoppel should apply to their claims against Ryan Homes—allowing them to bring these claims despite filing after the one-year contractual limitations period—because they "relied on the representations by . . . Ryan Homes . . . regarding the long term efficacy of the sewer system, the root cause(s) of the issues, as well as representations that maintenance and repair efforts by JCI and others would resolve the frequent sewage backups and flooding events." ECF No. 63 ¶ 157. Plaintiffs further allege that they "delayed in investigating and pursuing possible legal action

---

[6] *Felty* arose under Virginia law, but the Virginia standard for equitable estoppel appears to be substantively the same as the Maryland standard. *Compare Cunninghame v. Cunninghame*, 364 Md. 266, 289–90 (2001) (describing the equitable estoppel standard under Maryland law) *with Princess Anne Hills Civic League, Inc. v. Susan Constant Real Est. Tr.*, 243 Va. 53, 59 (1992) (describing the standard under Virginia law).

because of these repeated representations and assurances that the problems with the sewage system would be rectified. *Id.* Similarly, Plaintiffs contend that in 2021, Ryan Homes sent homeowners an email stating that "Ryan Homes and Caruso Homes had investigated the problems and had 'uncovered a damaged sewer line which created low pressure in the sewer system'" and that "[as] of September 27, 2021, the system is running correctly and the land developer (Caruso Homes) will continue with corrective maintenance to ensure this does not happen again." *Id.* ¶ 126. Plaintiffs allege another email was sent to "to purchasers of Ryan Homes properties that were still under development, with an additional assurance that the sewer issues 'will not impact the construction, settlement, or quality of your future Ryan Home.'" *Id.* ¶ 127.

Plaintiffs argue that through these statements and other "affirmative conduct, Ryan Homes created and perpetuated the belief that the issues with sewage backups were caused solely by factors other than the sub-par construction of their homes, and further that the corrective measures being put into place by Caruso Homes and the HOA would resolve those issues." ECF No. 85 at 13. Plaintiffs argue it was not until late 2023, after "a few Signature Club homeowners discovered after a sewage backup that their homes were not fitted with backflow preventers, in violation of applicable building codes," ECF No. 63 ¶ 98, that they realized Ryan Homes' statements were not accurate, and that its alleged faulty workmanship was at least partly at fault.[7]

---

[7] It is unclear from the complaint where Plaintiffs contend "backflow preventers" should have been installed. In some paragraphs in the complaint, they contend these are devices that should have been installed within Plaintiffs' homes. *E.g.*, ECF No. 63 ¶ 98. Elsewhere they contend they are devices that should have been installed within the "gravity lines" themselves. *E.g.*, *id.* ¶ 85.

Unlike some of the cases cited by Plaintiffs, this is not a case where the defendant expressly acknowledged its liability or asked the plaintiff to delay in filing the suit. *See U. S. for Use & Benefit of Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 896 (4th Cir. 1968) (equitable estoppel applied where the defendant acknowledged its liability to the plaintiff); *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 876–77 (7th Cir. 1997) (equitable estoppel applied where counsel explicitly agreed to refrain from filing suit until defense counsel was available to negotiate). Instead, this case is similar to *Booth Glass Co. v. Huntingfield Corp.*, where the Supreme Court of Maryland (then the Court of Appeals) held that the statute of limitations was not tolled in connection with leaking windows when the installer "made numerous attempts to repair the work" and made assurances, "both orally and in writing, that he would do what was necessary to stop the leaks." 304 Md. 615, 617 (1985). The *Booth Glass* court concluded that "it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.'" *Id.* at 624 (quoting *Nyitrai v. Bonis*, 266 Md. 295, 300 (1972)). Thus, the court held, the repair attempts and promises to fix the issues were not grounds for equitable estoppel. *Id.* at 624–25.

Here, it is undisputed that Plaintiffs knew that there were significant problems with the sewer system within one year of purchasing their houses. Like in *Booth Glass*, Ryan Homes' alleged promises that the problems would be fixed and that after certain attempted repairs the sewer was running correctly are insufficient to trigger equitable estoppel. Thus, Plaintiffs' negligence claims in counts 2 and 5 against Ryan Homes (as well as the implied warranty claims in count 12) are barred by the contractual

34

limitations provision. The Court will grant Ryan Homes' motion to dismiss these three claims against it.

## IV.    Negligent Misrepresentation (Counts 5 and 6)

Plaintiffs allege in count 5 that Ryan Homes and NVR Services are liable to Plaintiffs Bell and the Colvins for negligent misrepresentation. In count 6, Plaintiffs allege that Caruso Homes, Apex, Signature Club 2016 Residential, and Caruso Signature Club Mgt. are liable to Plaintiff Watson for the same. Other than the allegations of impermissible group pleading, the Caruso Defendants argue only that the economic loss doctrine bars this claim. The Court has addressed and rejected those arguments above. As also explained above, this claim is time-barred as to Ryan Homes due to the one-year contractual statute of limitations. Thus, the Court will directly address only NVR Services in this section, but the reasoning applies equally to Apex, as the allegations against these two Defendants mirror each other.

The elements of negligent misrepresentation are:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 656–57 (2000) (cleaned up) (quoting *In Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 336–37 (1982)).

Plaintiffs allege that NVR Services "had a duty to provide honest and accurate information to prospective Signature Club homebuyers of properties built by Ryan Homes so that these customers could make informed choices on the purchase of a

home," ECF No. 63 ¶ 337, and that, "[i]n connection with the sale and prospective sale of homes built by Ryan Homes in the Signature Club community, . . . NVR Services, Inc. misrepresented or omitted material facts concerning the nature and type of the private sewer system at Signature Club" and "the costs, assessments, and fees arising from the private sewer system at Signature Club," *id.* ¶¶ 338–339; *see id.* ¶ 109 ("Ryan Homes properties . . . were listed by . . . NVR Services on Bright MLS . . . as operating on a 'public' sewer system, despite the fact that Bright MLS permits listing agents and/or brokers to select 'Private Sewer' or 'Private/Community Septic Tank' as an option when creating a new listing"). Plaintiffs continue that they "were led to believe through . . . NVR Services' misrepresentations and omissions of material fact that the sewer system at Signature Club was a 'public' utility and otherwise would be functional, adequate for use, affordable, cost-effective, and safe." *Id.* ¶ 341.

NVR Services argues that Plaintiffs have failed to adequately allege it owed them a duty, that Plaintiffs relied on NVR Services' statements, or that they suffered damages due to the statements. At a minimum, Plaintiffs have failed to adequately allege reliance or damages. Therefore, the Court will dismiss this claim against NVR Services.

Regarding reliance, Plaintiffs allege that "[t]he listing information provided to Bright MLS by NVR Services and Apex Realty was then disseminated publicly to consumers, including the Plaintiffs . . . and Plaintiffs . . . relied upon and utilized that information in making the decision to purchase homes at Signature Club." *Id.* ¶ 111. Similarly, Plaintiffs Bell and the Colvins allege that they "relied to [their] detriment on false representations by NVR Services and/or Ryan Homes or their agents that the home operated on a 'public' sewer system. *Id.* ¶¶ 232, 248, 266. Finally, they allege that "[i]f these Plaintiffs and alleged Class Members would have received true and accurate

information about the nature, type, functionality, safety, and cost of the private sewer system, they would have either not purchased their homes or would have paid substantially less for them." *Id.* ¶ 344.

These assertions of reliance are conclusory and devoid of factual allegations that any of the named Plaintiffs specifically saw or relied on the MLS listing with NVR Services' alleged misrepresentation that the homes had a private sewer system. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, the Court will dismiss this claim against NVR Services without prejudice (and with prejudice as to Ryan Homes because it is time-barred).

Finally, while not separately argued by Apex, this claim against Apex mirrors the claim against NVR Services. *See* ECF No. 63 ¶ 110 ("Caruso Homes properties . . . were listed by . . . Apex Realty . . . as operating on a "public" sewer system"); ¶ 111 ("The listing information provided to Bright MLS by NVR Services and Apex Realty was then disseminated publicly to consumers, including the Plaintiffs . . . and Plaintiffs . . . relied upon and utilized that information in making the decision to purchase homes at Signature Club."); *id.* ¶ 284 ("Ms. Watson relied to her detriment on false representations by Signature 2016 Residential, Caruso Homes, Caruso Signature Club Mgt, and/or Apex Realty that the home was on a 'public' sewer system."); *id.* ¶ 355 ("If Plaintiff Watson and alleged Class Members would have received true and accurate information about the nature, type, functionality, safety, and cost of the private sewer system, they would have either not purchased their homes or would have paid substantially less for them."). Thus, the Court will dismiss this claim without prejudice against Apex as well.

**V.    Violations of the MCPA (Counts 7 and 8)**

Plaintiffs have alleged violations of the MCPA against Ryan Homes and NVR

Services in count 7 and against Caruso Homes, Apex Reality, and Signature 2016

Residential in count 8. The MCPA prohibits trade practices that include "[f]alse . . . or

misleading . . . statement[s] . . . which ha[ve] the capacity, tendency, or effect of

deceiving or misleading consumers" and "omission of any material fact with the intent

that a consumer rely on the same in connection with . . . [t]he . . . sale of any . . .

consumer realty." Md. Code, Com. Law § 13-301 (1) & (9). To bring a standalone claim

under the MCPA, a plaintiff must allege "(1) an unfair or deceptive practice or

misrepresentation that is (2) relied upon, and (3) causes [the plaintiff] actual injury."

*Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022) (quoting

S*tewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). "'[F]raud-based claims

under the MCPA are subject to Federal Rule of Civil Procedure 9(b)'s heightened

pleading standard' and 'must at a minimum, describe the time, place, and contents of

the false representations, as well as the identity of the person making the

misrepresentation and what he obtained thereby.'" *Bryant v. Koppers, Inc.*, 627 F.

Supp. 3d 466, 478 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr.

24, 2023) (quoting *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F.

Supp. 3d 698, 710 (D. Md. 2020)).

**A.    Ryan Homes**

In support of count 7, Plaintiffs allege that Ryan Homes and NVR Services

"engaged in false and misleading statements to these Plaintiffs" that contributed to

Plaintiffs' decision to purchase of the houses. ECF No. 63 ¶ 359. The Court has

concluded above that the misstatement in the MLS listings that the sewer system was

public is not sufficient alone to make out a misrepresentation claim. But in connection with this MCPA claim against Ryan Homes, Plaintiffs also allege that Ryan Homes made other alleged misrepresentations about the Signature Club sewer system, including that it was "functional," "adequate for use," "cost-effective," and "safe." *Id.* ¶ 359. Plaintiffs continue that Ryan Homes "advertised and offered properties as safe, habitable, [and] free of defect" "without the intent to sell them as advertised." *Id.* ¶¶ 359 & 361. Plaintiffs further allege that Ryan Homes "made representations upon the sale of Signature Club homes that the properties were of a particular standard, which they were not," and "that the homes were or would be constructed in accordance with all applicable building codes," *id.* ¶ 373, and that "Ryan Homes otherwise concealed that the properties were not constructed as warranted or in accordance with applicable building codes," *id.* ¶ 363. Finally, Plaintiffs allege that Plaintiffs Bell and the Colvins "relied to [their] detriment on false representations by . . . Ryan Homes . . . that the home would be constructed in accordance with applicable building codes." *Id.* ¶¶ 232, 248, 266.

Ryan Homes argues that Plaintiffs' MCPA claims fail because Plaintiffs do not adequately allege that they relied on any particular statements or omissions related to the sewage system at Signature Club in their decisions to purchase their homes. At a minimum, however, Plaintiffs have alleged that Ryan Homes made specific statements that the properties were free of defects and were of a particular standard, that those statements were made before Plaintiffs purchased the homes, that those statements induced Plaintiffs to buy the properties and that, with respect to the sewer system, the statements listed above were false. *See Lemma v. CalAtlantic Grp., Inc.*, 643 F. Supp. 3d 564, 572 (D. Md. 2022) (concluding that similar representations precluded summary judgment on MCPA claims).

39

In its reply brief, Ryan Homes distinguishes *Lemma* on the ground that in that case the homes were already built when they were sold, whereas here they were not yet built, contending that Plaintiffs here "fail to explain how the statements, which are simply terms taken from the parties' underlying contracts and substantially pre-date any actual construction on Plaintiffs' homes, give rise to an actionable claim under the MCPA." ECF No. 93 at 10. Ryan Homes continues that "Plaintiffs allege [Ryan Homes] made misrepresentations regarding the quality of construction *to be performed in the future*, which could not be false when made because Plaintiffs' homes had not yet been built." *Id.* at 10 n.9.

The problem with that argument—at least at the pleadings stage—is that it is premised on the contention that all of the statements underlying Plaintiffs' MCPA claim "substantially pre-date any actual construction on Plaintiffs' homes." ECF No. 93 at 10. But Plaintiffs allege the opposite; the amended complaint alleges that Plaintiffs purchased their homes and moved into them all in the course of a few months in 2021. *See* ECF No. 63 ¶ 107 ("In early 2021, residents began purchasing and moving into homes in the Signature Club development."), *id.* 395, 404 (alleging that the summer of 2021 was "only a few months after these Plaintiffs and alleged Class Members moved into their new homes," indicating that at least some of the houses must have been completed by spring 2021); *id.* ¶¶ 244 & 263 (alleging that the Colvins purchased their home in March 2021); *id.* ¶ 225 (alleging that Plaintiff Bell purchased her home in August 2021); *but see id.* ¶¶ 232, 246, 248, 264 (alleging that Plaintiffs Bell and the Colvins relied on the statement "that the home *would be* constructed in accordance with applicable building codes") (emphasis added). Moreover, Plaintiffs allege that substantial portions of the sewer system were constructed before 2021. *See, e.g.*, ECF

No. 63 ¶¶ 33, 102. The Court understands that Ryan Homes contends that any representations it made about the adequacy and quality of the private sewer system cannot have been false when made because the system was still being built. And discovery may bear that out. But at this stage the Court must accept Plaintiffs' allegations and reasonable inferences therefrom as true, and here Plaintiffs have alleged that Ryan Homes made representations that contributed to their decisions to purchase their Signature Club homes and that those representations were false when made. Accordingly, Plaintiffs have adequately alleged a violation of the MCPA, and the motion to dismiss count 7 against Ryan Homes will be denied.

### B.    NVR Services

In count 7, Plaintiffs allege that NVR Services violated the MCPA by "[m]isrepresenting that the Signature Club sewer system was a 'public' sewer system," "[f]ailing to represent or disclose to prospective homebuyers the nature and type of sewer system, and "[f]ail[ing] to represent or disclose to prospective homebuyers that residents' wastewater was not a public utility." *Id.* ¶¶ 359–60. Likewise, Plaintiffs allege that NVR Services "advertised and offered properties as safe, habitable, free of defect, and as having an adequate and functional 'public' sewer system" "without the intent to sell them as advertised," *id.* ¶ 361, and "knowingly concealed the true nature and cost of the sewer system from prospective buyers," *id.* ¶ 363. This claim tracks Plaintiffs' negligent misrepresentation claim, essentially arguing that NVR Services' statement in the MLS listing that the sewer system was public is an actionable misrepresentation.

NVR Services makes various arguments against this claim, including that it fails because Plaintiffs have not pled the required elements of reliance and injury. *Alexander*, 23 F.4th at 380; *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 253 (D. Md.

2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ("In order to prevail on any of these [MCPA] claims, [the plaintiffs] must show that they reasonably relied to their detriment on some promise or misrepresentation made by" the defendant); *see also Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422, 432 (D. Md. 2015) ("To establish reliance under the MCPA, Plaintiffs must plead and prove that the false or misleading statement substantially induced their choice.") (quoting C*urrie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013)). Thus, NVR Services' arguments against this claim also track its arguments in opposition to the negligent misrepresentation claim.

As with the negligent misrepresentation claim, Plaintiffs rely on legal conclusions and have not adequately alleged that NVR Services' statement in the MLS listing that the sewer system was public "substantially induced" Plaintiffs' choice to purchase the homes. *Peete-Bey*, 131 F. Supp. 3d at 432; *Alexander*, 23 F.4th at 380 ("While plaintiffs perfunctorily allege that they 'reasonably relied upon the direct and indirect material acts and actions of'" of the defendant, "this looks more like a 'threadbare recital[ ] of the elements of a cause of action' than a 'plausible claim for relief.'") (quoting *Iqbal*, 556 U.S. at 678). There are no allegations that any of the named Plaintiffs actually reviewed the MLS listing with the alleged misrepresentation from NVR Services. As with the negligent misrepresentation claim against NVR Services, this claim will be dismissed without prejudice.

### C.    Caruso Homes, Apex, and Signature 2016 Residential

In count 8, Plaintiffs allege that Defendants Caruso Homes, Apex Realty, and Signature 2016 Residential made statements and omissions about the sewer system that were nearly identical to those allegedly made by Ryan Homes and NVR Services. *See*

ECF No. 63 ¶¶ 370-71. Plaintiffs also allege that "Caruso Homes, Apex Realty, and Signature 2016 Residential advertised Signature Club homes" "as safe, habitable, free of defect, and as having an adequate and functional 'public' sewer system" "without the intent to sell them as advertised," *id.* ¶ 372, and "knowingly concealed the true nature and cost of the sewer system from prospective buyers," *id.* ¶ 374, that "Caruso Homes and Signature Club 2016 Residential . . . made representations . . . that the properties were of a particular standard, which they were not," *id.* ¶ 373, that "the homes were or would be constructed in accordance with all applicable building codes," *id.*, and that "Caruso Homes, Apex Realty, and Signature 2016 Residential . . . concealed that the properties were not constructed as warranted or in accordance with applicable building codes," *id.* ¶ 374. Finally, Plaintiffs allege that "Ms. Watson relied to her detriment on false representations by Signature 2016 Residential, Caruso Homes, Caruso Signature Club Mgt, and/or Apex Realty that the home was on a 'public' sewer system and would be constructed in accordance with applicable building codes." *Id.* ¶ 284.

Caruso Homes, Apex Realty, and Signature 2016 Residential argue that Plaintiffs have failed to plead with specificity and particularity the underlying circumstances and reliance necessary to support this claim. These Defendants do not make separate arguments as to each of themselves, but the Court agrees as to Apex. Like NVR Services, Apex is alleged to have misrepresented in the MLS listing(s) that the homes had a public rather than private sewer system. As discussed above in connection with NVR Services, this allegation alone is insufficient for an MCPA claim or a negligent misrepresentation claim. Thus, the Court will dismiss this claim against Apex without prejudice.

As for Caruso Homes and Signature 2016 Residential, the allegations against them, as detailed above, are more robust and include that at the time that Plaintiffs

purchased their houses, Caruso Homes and Signature 2016 allegedly made misrepresentations that Plaintiffs relied on about, among other things, the quality of the construction. The Court will deny Caruso Homes and Signature 2016 Residential's motion to dismiss as to this claim. For these two Defendants, Plaintiffs have adequately alleged the time, place, and contents of at least some of these alleged misrepresentations, including that they made specific statements that the properties were free of defects and were of a particular standard, which induced Plaintiffs to buy the properties. *See Lemma*, 643 F. Supp. 3d at 572. Therefore, the Court will deny the motion to dismiss count 8 as to Caruso Homes and Signature 2016 Residential.

## VI.    Private Nuisance (Count 9)

In count 9, Plaintiffs allege claims of private nuisance against Caruso Homes, Signature 2016 Residential, Caruso Signature Club Mgt., Signature Club HOA, VIKA, Delmarva, and Airvac. In their response brief, Plaintiffs withdrew this claim against Airvac. ECF No. 84 at 9 n.1. The remaining private nuisance claims are based on Plaintiffs' allegations regarding the allegedly defective sewer and how these Defendants' "acts and omissions" "have caused an unreasonable and substantial disturbance in the enjoyment of the Plaintiffs' and alleged Class Members' properties." ECF No. 63 ¶ 380. Plaintiffs allege that some of the Defendants (Caruso Homes, Caruso Signature Club Mgt., and Signature 2016 Residential, and Signature Club HOA) "have a possessory or property interest in land neighboring the Plaintiffs'" and "have the ability to access, control, maintain or make repairs to the private sewer system and/or other common elements of the Signature Club community." *Id.* ¶¶ 381 & 382. Plaintiffs do not make such allegations against VIKA and Delmarva and instead allege that they are liable for

private nuisance because they allegedly failed to properly install the sewer system. *Id.* ¶ 386.

Private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 80 (1994) (quoting the Restatement (Second) of Torts § 821D). "[T]o be actionable, a nuisance must be one which 'in view of the *circumstances* of the case, is *unreasonable* and in derogation of the rights of the complainant.'" *Wietzke v. Chesapeake Conf. Ass'n*, 421 Md. 355, 376 (2011) (quoting *Dittman v. Repp*, 50 Md. 516, 522 (1879)).

### A.    Signature Club HOA

Plaintiffs allege that "[i]n 2018, before installation of the sewer system was complete, Signature Club HOA assumed and undertook a duty to utilize [an] easement to maintain the private sewer system at Signature Club." ECF No. 63 ¶ 384. Plaintiffs contend that Signature Club HOA disturbed "Plaintiffs' and the alleged Class Members' property rights by, among other things, failing to create adequate plans for maintenance of the sewer system before it went into operation and/or before residents began purchasing and moving into homes in the Signature Club development." *Id.* Plaintiffs further allege that Signature Club HOA and the other three Caruso Defendants as to which Plaintiffs have asserted the private nuisance claim "failed to take reasonable and prompt steps to abate the conditions that unreasonably disturbed the Plaintiffs' and the Class Members' enjoyment of their properties." *Id.* ¶ 385. Plaintiffs elaborate as follows:

> These acts and omissions include, but are not limited to, failing to test and ensure that the discolored and foul-smelling water flowing within the community was safe for drinking and household use, failing (in 2021) to investigate and identify the root cause of the sewer problems as opposed to shifting blame to residents' water usage, failing (in 2021) to make repairs

45

> such as replacing the butterfly valve in the pump house,
> purchasing new vacuum pumps, and installing backflow
> check valves in each system/air release, and failing (presently)
> to adequately investigate and abate the sewage backups,
> flooding events, and water supply issues that continue to this
> day.

*Id.*

Signature Club HOA argues that "if a defendant [like itself] did not cause a nuisance, liability attaches only if the nuisance is abatable 'without unreasonable hardship or expense.'" ECF No. 69-1 at 24 (quoting *Colt Energy, Inc. v. S. Star Cent. Gas Pipeline, Inc.*, Case No. 22-cv-3099, 2023 WL 5126892, at *3 (10th Cir. Aug. 10, 2023)).[8] It argues that it was not involved in the construction of the sewer and that the amended complaint alleges that Signature Club HOA did everything it could to fix the problems, remarking that "[t]he Amended Complaint does not allege anything else the HOA could reasonably have done." *Id.* at 25. Signature Club HOA concludes that Plaintiffs have failed to plausibly allege any unreasonable acts or inaction by Signature Club HOA to abate a nuisance that it did not cause.

As discussed above, the amended complaint adequately alleges that Signature Club HOA has property interests in land neighboring Plaintiffs' properties and has control over access to and maintenance of the sewer system, ECF No. 63 ¶ 382, and disturbed "Plaintiffs' and the alleged Class Members' property rights by, among other things, failing to create adequate plans for maintenance of the sewer system," *id.* ¶ 385. The amended complaint also adequately alleges that there were reasonable steps

---

[8] The Court is not deciding whether this is the pertinent standard under Maryland law. It merely addresses Signature Club HOA's argument that is based on *Colt Energy*, an unpublished 10th Circuit case.

Signature Club HOA could have undertaken to abate the nuisance without unreasonable hardship, but did not do so, including creating an adequate plan for maintenance, testing the water for contaminants, properly investigating the root cause of the sewer problems rather than blaming the residents, and making timely repairs. *Id.* ¶¶ 384–385. For these reasons, the private nuisance claim against Signature Club HOA may proceed.

### B.    Caruso Homes, Caruso Signature Club Mgt., and Signature 2016 Residential

Plaintiffs also assert a private nuisance claim against Caruso Homes, Caruso Signature Club Mgt., and Signature 2016 Residential. They allege those Defendants have property interests in land neighboring Plaintiffs' land and have control over the sewer system, *id.* ¶ 381, and disturbed Plaintiffs' use of their property by, among other things, "failing to ensure that the sewer system was adequate . . . , allowing the construction of new homes to cause further damage and blockages in the sewer system, and failing to properly remediate the true cause(s) of the repeated sewage backups and flooding events that begun in 2021," *id.* ¶ 383. Likewise, Plaintiffs allege that these Defendants "failed to take reasonable and prompt steps to abate the conditions" including "failing to test and ensure that the discolored and foul-smelling water flowing within the community was safe for drinking and household use," "failing (in 2021) to investigate and identify the root cause of the sewer problems as opposed to shifting blame to residents' water usage," "failing (in 2021) to make repairs such as replacing the butterfly valve in the pump house, purchasing new vacuum pumps, and installing backflow check

valves in each system/air release," and "failing (presently) to adequately investigate and abate the sewage backups, flooding events, and water supply issues." *Id.* ¶ 385.

In a brief argument, these Defendants contend that creating a sewer system is not an unreasonable use of land as a matter of law and that Plaintiffs did not allege that these Defendants have a property interest in the land. But what Plaintiffs have alleged is that these Defendants created and have maintained a sewer system that has caused issues on Plaintiffs' properties, and that these Defendants have a current possessory interest in neighboring land. Thus, the Court will deny the motion to dismiss count 9 as to Caruso Homes, Caruso Signature Club Mgt, and Signature 2016 Residential.

### C.    VIKA and Delmarva

Unlike the previous Defendants, Plaintiffs do not allege that VIKA or Delmarva have a relevant current land interest related to the Signature Club property. Instead, Plaintiffs allege these two Defendants "caused or substantially contributed to the construction, installation, improper maintenance and/or repair of [the defective] sewer system . . . disturbing Plaintiffs' and the alleged Class Members' use and enjoyment" of their property. *Id.* ¶ 386. More specifically, Plaintiffs allege that VIKA disturbed their use of land by

> designing a sewer system that was not adequate to keep up with the demands of the community as proposed in the amended site plan, by failing to ensure the installation or proper installation of lines and piping, by failing to ensure the installation or proper installation of backflow containment devices, and/or by failing to address known issues or potential failure points in the sewer system.

*Id.* ¶ 386(a). As for Delmarva, Plaintiffs allege that their enjoyment of their land was hampered by Delmarva "improperly installing lines and piping in the sewer system,

failing to install functioning backflow preventers/containment devices, and failing to address known issues or potential failure points in the sewer system." *Id.* ¶ 386(c).

Both VIKA and Delmarva argue that they cannot be liable for private nuisance because they do not own or have control over land in proximity to Plaintiffs' properties that could cause a private nuisance to Plaintiffs. "Under Maryland law, defendants cannot be liable for a private nuisance which emanates from property which they do not own or control." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 255–56 (D. Md. 2000). And to the extent it can be said that VIKA and Delmarva exercised control over the property when they were installing the sewer system, it is likewise "well established that Maryland law does not provide a cause of action in nuisance to a subsequent occupant of land against a prior occupant for activities conducted on the land during the prior occupancy." *Id.* at 255; *see also Rosenblatt*, 335 Md. at 80 (explaining that courts that have considered private nuisance claims brought by "a subsequent occupier of property" "have rejected them on the basis that a cause of action for private nuisance requires an interference with a neighbor's use and enjoyment of the land").

Plaintiffs allege a novel theory based on an unpublished District of Vermont case that relied on a section of the Restatement that Plaintiffs admit has not been explicitly adopted by Maryland. *See Burlington Sch. Dist. v. Monsanto Co.*, Case No. 2:22-cv-215, 2023 WL 4175344 (D. Vt. June 26, 2023); ECF No. 88 at 28 ("Insofar as the question of whether the Maryland Supreme Court's explicit adoption of § 821D of the Restatement extends to § 834 is unsettled, this Court should await a factual record before fully assessing this claim."). In *Burlington School District*, the court denied a motion to dismiss a private nuisance claim against Monsanto, which allegedly manufactured harmful chemicals that were found in the school's building materials, based on the

"substantial participation" standard in Restatement (Second) of Torts § 834. 2023 WL 4175344 at *1, *5–6. Section 834 provides that "[o]ne is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on" and that liability for private nuisance may arise where "one person's acts set in motion a force or chain of events resulting in the invasion." Restatement (Second) of Torts § 834.

Because Plaintiffs' theory conflicts with current Maryland law, as recognized in *Rosenblatt* and *Adams*, this Court will not adopt it. As a result, the private nuisance claims against VIKA and Delmarva in count 9 will be dismissed as neither Defendant owns or controls land neighboring Plaintiffs' properties.

## VII.  Breach of Express Warranties (Counts 10 & 11) and Breach of Implied Warranties (Counts 12 and 13)

In counts 10 through 13, Plaintiffs assert that Ryan Homes, Caruso Homes, and Signature 2016 Residential breached warranties about the homes—either express (counts 10 and 11) or implied (counts 12 and 13). As discussed above, the implied warranty claim against Ryan Homes in count 12 is time-barred. *See* § III. C., above. So the Court now turns to whether Plaintiffs have stated claims on which relief can be granted in counts 10 (the express warranty claim against Ryan Homes), and counts 11 and 13 (the express and implied warranty claims against Caruso Homes and Signature 2016 Residential).

### A.    Ryan Homes

In count 10, Plaintiffs allege that Ryan Homes breached express warranties by selling the houses to Plaintiffs Bell and the Colvins with defective sewers. ECF No. 63 ¶ 392. Plaintiffs allege that these express warranties arose pursuant to Md. Code, Real

Prop. § 10-202, which applies to written promises that are made part of the basis of the parties' bargain. Md. Code Ann., Real Prop. § 10-202(a)(1).

Plaintiffs do not rely on, and have not made claims under, the actual express limited warranties provided by Ryan Homes referenced in Plaintiffs' purchase agreements, ECF Nos. 70-2 & 70-3 ¶ 6, and which were enumerated in the "Ryan Homes Homeowner's Manual," ECF No. 70-8 (possibly because those limited warranties include an arbitration provision).[9] Instead, Plaintiffs allege that disclosure notices provided to them at the time of sale that disclosed the existence of the limited warranties, ECF No. 70-6 & 70-7, constitute additional express warranties pursuant to section 10-202.

On their face, the disclosure documents are not independent express warranties. They merely disclose the existence of Ryan Homes' express limited warranties that are described in detail in the purchase paperwork. Under section 10-202(a)(1), "[a]ny written affirmation of fact or promise which relates to [an] improvement [to real property] and is *made a part of the basis of the bargain* between the vendor and the purchaser creates an express warranty that the improvement conforms to the affirmation or promise." Md. Code Ann., Real Prop. § 10-202(a)(1) (emphasis added). The purchase agreements and attendant documents in this case make clear what the express warranties were and that the disclosure documents merely disclosed the existence of those express limited warranties. Thus, any affirmations in the disclosure

---

[9] Plaintiffs argue that the Court should not consider the warranty document without converting this motion into one for summary judgment. But because the amended complaint makes specific reference to the warranty issued by Ryan Homes, including the terms outlined therein, *see* ECF No. 63 ¶¶ 229, 247, 265, the Court can consider the document without converting the motion. *Okorie*, 617 F. Supp. 3d at 323.

documents that could be construed as going beyond the bounds of the limited warranties were not made a part of the basis of the bargain between Plaintiffs and Ryan Homes, are not subject to section 10-202, and do not create additional express warranties. Therefore, Plaintiffs have not stated a cognizable express warranty claim against Ryan Homes, and the Court will grant Ryan Homes' motion to dismiss count 10.[10]

### B.    Caruso Homes and Signature 2016 Residential

In counts 11 and 13, Plaintiffs allege that Caruso Homes and Signature 2016 Residential violated express and implied warranties in connection with the purchase agreements. ECF No. 63 ¶¶ 401-402. Those Defendants make different arguments from Ryan Homes. These Defendants argue those claims should be dismissed because they are of a "kitchen sink" variety, lacking specifics regarding the alleged defect. Caruso Homes also argues that it is not a signatory to the purchase agreement and, thus, counts 11 and 13 against it should be dismissed.

But Plaintiffs have alleged that the Caruso/Signature 2016 purchase agreements contained express and implied warranties that were breached because Caruso Homes improperly built the homes by, among other things, selling the homes with defects in the

---

[10] Plaintiffs also briefly argue that "[o]ther language within the Purchase Agreements warranted that the homes were constructed in accordance with all applicable building codes and with the performance standards and/or guidelines adopted by the National Association of Home Builders, or their equivalent" and that, pursuant to section 10-202(a)(1), these too have become additional express warranties. ECF No. 85 at 21 (quoting ECF No. 63 ¶ 393). As with the disclosure document, the Court concludes that such statements were not "made a part of the basis of the bargain," Md. Code Ann., Real Prop. § 10-202(a)(1), such that they created separate express warranties. The purchase agreement and attendant documents make clear what express warranties the parties bargained for and, as a result, those terms govern here.

sewer system that caused sewage backup and floods. *See id.* ¶¶ 404–07, 420–23. The amended complaint describes in detail the alleged defects that Plaintiffs contend breached the warranties. *See, e.g.*, *id.* ¶¶ 50–193. Moreover, Plaintiffs allege that the purchase agreement was "signed by Edmund Levendusky, Vice President and Division Manager, on behalf of Signature 2016 Residential, *Caruso Homes*, and Caruso Signature Club Mgt." *Id.* ¶ 282 (emphasis added). These allegations are sufficient to overcome Caruso Homes and Signature 2016 Residential's arguments to the contrary. Therefore, the Court will deny the motion to dismiss counts 11 and 13 against Caruso Homes and Signature 2016 Residential.

## VIII.  Class Allegations

As noted above, Plaintiffs have sued on their own behalf, but also have pled the case as a putative class action. Although Plaintiffs have not (yet) moved for class certification, Defendants argue that the Court should preclude Plaintiffs from doing so by striking the putative class allegations. These arguments are premature; the Court declines to consider whether class certification would be appropriate without the benefit of full briefing regarding the requirements of Rule 23. *See L. Offs. of Leonard I. Desser, P.C. v. Shamrock Commc'ns, Inc.*, Case No. 12-cv-2600-JKB, 2013 WL 2244811, at *2 (D. Md. May 21, 2013) (denying defendant's "motion to strike the class allegations in the complaint" because it was "effectively an opposition to Plaintiff's anticipated motion for class certification" and thus was "premature") (citing 7B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1795, at 40 (3d ed. 2005)).

## CONCLUSION

For reasons provided above, and by separate order, the Court will order as follows:

1.      The motion to dismiss filed by Signature Club HOA (ECF No. 69) will be DENIED. Therefore, counts 2 and 3 for negligence, count 4 for negligent management, and count 9 for private nuisance will continue against Signature Club HOA.

2.      The motion to dismiss filed by Ryan Homes (ECF No. 70) will be GRANTED in part and DENIED in part. The motion will be GRANTED in that count 2 for negligence, count 5 for negligent misrepresentation, and count 12 for implied warranty against Ryan Homes will be DISMISSED with prejudice as time barred. Count 10 for express warranty against Ryan Homes will also be DISMISSED with prejudice. The remainder of the motion will be DENIED. Therefore, count 7 for violation of the MCPA will continue against Ryan Homes.

3.      The motion to dismiss filed by Delmarva (ECF No. 71) will be GRANTED in part and DENIED in part. The motion will be GRANTED in that count 9 for private nuisance against Delmarva will be DISMISSED with prejudice. The remainder of the motion will be DENIED. Therefore, counts 2 and 3 for negligence will continue against Delmarva.

4.      The motion to dismiss filed by Airvac (ECF No. 72) will be GRANTED in part and DENIED in part. The motion will be GRANTED in that count 1 for strict products liability will be DISMISSED without prejudice and count 9 for private nuisance against Airvac will be DISMISSED with prejudice. Otherwise, the motion will be DENIED. Therefore, counts 2 and 3 for negligence will continue against Airvac.

5.      The motion to dismiss filed by VIKA (ECF No. 73) will be GRANTED in part and DENIED in part. The motion will be GRANTED in that count 9 for private nuisance against VIKA will be DISMISSED with prejudice. The remainder of the motion will be DENIED. Therefore, counts 2 and 3 for negligence will continue against VIKA.

6.      The motion to dismiss filed by Caruso Homes, Signature Club Mgt.,
Signature 2016 Residential, and Apex Realty (ECF No. 76) will be GRANTED in part and
DENIED in part. The motion will be GRANTED in that count 6 for negligent
misrepresentation and count 8 for violations of the MCPA will be DISMISSED without
prejudice *as to Apex only*. The motion will otherwise be DENIED. Therefore, counts 2
and 3 for negligence, count 4 for negligent management, count 6 for negligent
misrepresentation, and count 9 for private nuisance will survive against Caruso Homes,
Signature Club Mgt., and Signature 2016 Residential. Also, count 8 for violation of the
MCPA, count 11 for breach of express warranty, and count 13 for breach of implied
warranty will survive against Caruso Homes and Signature 2016 Residential.

7.      The motion to dismiss filed by NVR Services (ECF No. 79) will be
GRANTED and count 5 for negligent misrepresentation and count 7 for violations of the
MCPA against NVR services will be DISMISSED without prejudice.

Because no claims remain against Apex and NVR Services, these Defendants will
be dismissed and marked as terminated on the docket.


Date:  September 29, 2025              _____/s/_____
                                      Adam B. Abelson
                                      United States District Judge